NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 93

No. 2014-441

| | |
|---|---|
| Cenlar FSB | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Joseph L. Malenfant, Jr. and Laurie G. Malenfant | May Term, 2015 |

Dennis R. Pearson, J.

Jeffrey J. Hardiman and Randall Souza of Shechtman Halperin Savage, LLP, Pawtucket,
  Rhode Island, for Plaintiff-Appellant.

Marc E. Wiener of Marc E. Wiener Law Offices, PLLC, Burlington, for Defendants-Appellees.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **ROBINSON, J.**   This case calls upon us to solve a procedural puzzle involving successive foreclosure actions on the same note. In particular, this case raises the question: What is the impact of a court's dismissal with prejudice of a lender's claim on a promissory note and accompanying foreclosure action with respect to the lender's ability to bring a subsequent claim for default on the note?

¶ 2.    Lender appeals a judgment for borrowers in lender's second action for a judgment on the note and foreclosure, after the first was dismissed with prejudice. Lender argues that the first dismissal cannot be interpreted as vacating the judgment on the note and for foreclosure that the trial court had previously issued in that case. Alternatively, lender contends that its notice of default in the initial foreclosure action was sufficient to satisfy its notice obligation in connection with its second foreclosure action. We conclude that the trial court's dismissal with prejudice of

the lender's first action on the promissory note and complaint for foreclosure did effectively vacate that court's prior judgment for lender on the note and for foreclosure. We conclude that lender was not on this record entitled to pursue a second action because it had not taken any steps to reinstate borrower's monthly payment obligations after lender had accelerated the note. Accordingly, we affirm.

¶ 3. The facts and procedural background are not in dispute, except where noted. In 1993, Joseph L. Malenfant, Jr. and Laurie G. Malenfant (borrowers) executed a promissory note secured by a mortgage on their property in Colchester to GMAC Mortgage Corp., the predecessor-in-interest to Cenlar FSB (lender).

¶ 4. By May 2008, borrowers had fallen into default on the loan. Lender filed its first action against borrowers for default on the note and a foreclosure remedy in December 2008. See Cenlar FSB v. Malenfant, Docket No. S1664-08 Cnc (Vt. Super. Ct.). On May 22, 2009, the court issued a judgment order finding borrowers to be in default on the note, calculating the amounts due to lender, and issuing a decree of foreclosure in favor of lender in that action.[1] Borrowers timely filed a "letter of appeal" arguing, among other things, that they were in the process of consideration for a loan modification, and that under the applicable regulations the foreclosure process was to be stopped until complete consideration was offered to them. The court issued an entry order directing the lender to show cause why the appeal should not be granted pursuant to Vermont Rule of Civil Procedure 80.1. In September 2009, following a hearing, the trial court ordered the lender to provide information to borrowers about the status of their loan-modification request, and ordered that no certificate of nonredemption would be issued

---

[1] As shorthand, we refer to this judgment as the "first foreclosure judgment" and the action as the "foreclosure action." However, we note that in addition to issuing a decree of foreclosure, setting a redemption period, and authorizing public sale of the property upon expiration of the redemption period without redemption, this first judgment also adjudicated borrowers' indebtedness to lender on the note and acknowledged the possibility of a deficiency judgment against borrower after the sale. For reasons that should become clear below, that this case is first and foremost about lender's attempt to collect in contract on a note, invoking foreclosure as a remedy, is important to our analysis.

2

unless the lender had complied with all applicable laws relating to the federal Making Home Affordable Program and explained to the court why borrower's application for loan modification was denied.[2]

¶ 5.     Borrowers and lender entered into a temporary forbearance and trial payment plan from March to June 2010.  During this period, court proceedings were suspended.  At a status conference following the end of this period, lender indicated that it was reviewing borrowers' loan-modification application.  Lender represented without contradiction that it last received payment on the mortgage in June 2010.  Borrowers suggested that from the end of the forbearance period onward, they repeatedly asked lender for information about the balance due to bring their balance current.  The court kept the case on the docket, and held a status conference on November 1, 2010.  Lender failed to appear.  On its own motion, the court issued an order, captioned "Dismissal Order," which read in its entirety:

> A status conference was held in this case [on October 29, 2010]. Both parties were permitted to call in rather than appearing in person.  Defendants Malenfant called; Plaintiff did not.  This case has been pending since 2008 and despite repeated conferences [in] which it was reported that modification or forbearance agreements were being discussed, nothing has been resolved.
>
> The court hereby dismisses the case with prejudice for Plaintiff's failure to prosecute by failing to appear at the scheduled conference today.

¶ 6.     Lender did not appeal this order.  Neither party filed a motion for relief from judgment or order, V.R.C.P. 60(b), or a motion to alter or amend, V.R.C.P. 59(e).  The order did not expressly state whether the judgment order and decree of foreclosure issued on May 22, 2009 was vacated.  The legal effect of this unappealed order of dismissal with prejudice is one of the issues in this case.

---

[2]  It is not clear from the record whether borrowers' request for permission to appeal remained pending following this hearing.  Although the court apparently never ruled on the motion, no party subsequently raised the issue.  The court instead shifted its focus to encouraging resolution through mediation.

¶ 7.     In September 2011, lender filed a second action for default on the note, and sought foreclosure.  The parties engaged in mediation but did not resolve the case.  After the trial court denied lender's motion for summary judgment, it held a final hearing on the merits in June 2014.  At that hearing, lender introduced evidence of the total redemption amount on that date and the total accelerated balance owed under the mortgage loan, assuming a default date of September 1, 2008—a different date from the default date asserted in the first default action.  The court dismissed this second foreclosure action because lender failed to send a new default notice prior to filing the second foreclosure action.  As the court explained in its written order, the mortgage deed required the lender to give the borrowers at least thirty days' notice of default and an opportunity to cure.  Lender's representative testified that the default date upon which this second foreclosure action was based was different from the first.  Because the filing of this second action was based on "a new, and different set of operative facts," the court dismissed the claim based on lender's failure to "complete the circle [by] . . . sen[ding] Defendants [a] notice of default and acceleration" based on the default date alleged in the second foreclosure action.

¶ 8.     The court made it clear that lender was free to file a new, third foreclosure action against borrowers, this time complying with the contractual requirement of notice before acceleration, with an opportunity to cure.  However, argument at the hearing revealed divergent views by the parties concerning the effect of both prior dismissals—the court's dismissal of the first foreclosure action with prejudice and also its dismissal of the second foreclosure action—on the scope of lender's potential third claim on the note and for foreclosure.  Moreover, the court wanted to be clear about the intended preclusive effect of its dismissal of this second foreclosure action with respect to any future action.  After argument and briefing by the parties, the court issued a written decision and final judgment order on September 18, 2014, reiterating its dismissal of the second foreclosure action and discussing the prospective effect of its dismissal, as well as the court's prior dismissal of the first foreclosure case.

4

¶ 9. The court rejected lender's argument that the May 2009 foreclosure judgment for lender was still in effect. It concluded that the only logical way to construe the court's November 1, 2010 dismissal of that case was to understand it as vacating the underlying foreclosure judgment. Moreover, it noted that lender's own conduct supported the court's understanding that the dismissal with prejudice required the lender to start over, with a "clean slate." Lender did not attempt to enforce the prior foreclosure decree, or request a certificate of nonredemption, but instead filed a new foreclosure action on the same note, using a later default date than the first action. Finally, the court noted that the issue was "largely academic," as the court would be highly unlikely to allow lender the necessary extension of time to sell the foreclosed property. The court declined to consider whether the court in the first foreclosure action had the authority to dismiss that case with prejudice, noting that lender did not appeal the dismissal order at the time.

¶ 10. Considering the preclusive effect of this second dismissal with respect to the relief that would be available to lender in a third action, the court stated that "all foreclosure actions are fundamentally equitable in nature, and thus the court has some discretion in adjusting the parties' respective rights and liabilities . . . to achieve a result which is . . . fair and just," within the constraints of statute. The court concluded that precluding lender from recovering any of the amounts it had advanced to pay borrowers' real-estate taxes through the course of these proceedings would be "harsh and fundamentally unfair." But the court concluded that its final judgment would bar lender from recovering of all of the accrued interest—as well as attorney's fees, late fees, filing fees, recording fees, and other costs incurred—from May 1, 2008 (the default date lender sought to prove in the first foreclosure action) to September 18, 2014 (the date of the court's final order dismissing the second foreclosure action). The court found that this would "strike the necessary balance between honoring finality and enforcing the court's orders, and still allowing [lender] to recover amounts where it is . . . out-of-pocket and has a more cognizable financial interest and a more compelling equitable claim." The court also noted

5

that lender would, in any event, still have to come up with yet another new, and different date of default in order to pursue a third foreclosure action.

¶ 11.    Lender filed this appeal.  Lender challenges the trial court's ruling that the initial foreclosure judgment was vacated by implication, both because the dismissal order did not reference the prior foreclosure judgment or specify that the judgment was vacated, and because the trial court lacked the authority to vacate the foreclosure judgment.  Lender further challenges the trial court's dismissal of the second foreclosure action, arguing that it satisfied the notice requirement by virtue of its initial notice of default to borrowers prior to the first action.

I.  Impact of the Dismissal of the First Action on the Court's Prior Foreclosure Judgment

¶ 12.    The trial court did not err in concluding that the final judgment in the first foreclosure action was vacated by implication, and that the final judgment of dismissal is not now subject to collateral attack in this action.  Lender contends that the trial court's first dismissal did not vacate the prior foreclosure judgment, and that, if it did, the trial court had no authority to, on its own initiative, vacate the prior judgment without notice to the parties or legally cognizable grounds.  Lender points out that there was no pending motion to dismiss, nor any pending Rule 60 motion to vacate or amend the foreclosure judgment order at the time of the trial court's dismissal order.  The trial court's dismissal did not comport with the notice requirements for dismissal on the court's own motion pursuant to Rule 41(b), and the case did not meet the requirements under Rule 41(b) for dismissal on the court's motion.  And, even if the mediation process for which the parties had effectively put the post-foreclosure judgment proceedings on hold had been mandatory under the applicable statute, which lender says it was not, dismissal with prejudice was not a sanction available under the statute in connection with lender's conduct in that mediation process.  In sum, lender argues the trial court had no authority to vacate the final foreclosure judgment.[3]

_____

[3]  We address lender's argument concerning the status of the first foreclosure judgment, but note that lender's assumptions as to the significance of that question for this appeal are

6

¶ 13. We begin with the question of whether the court's dismissal of the first foreclosure action effectively vacated the related foreclosure judgment. The interpretation and effect of a court's judgment or order is a question of law, which we review de novo. See TBF Fin., LLC v. Gregoire, 2015 VT 36, ¶ 19, 198 Vt. 607, 118 A.3d 511.

¶ 14. We agree with the trial court that the only reasonable way to read the court's November 2010 dismissal of the first foreclosure action was that it effectively vacated the foreclosure judgment for lender. The dismissal for failure to prosecute was issued in response to lender's failure to appear for a status conference, and to its delay in resolving borrowers' loan-modification application. If the order dismissing the first foreclosure action did not vacate the foreclosure judgment in that case, then it would have created an irremediable legal limbo. The court had already issued an order indicating that further judicial proceedings would be required before a certificate of nonredemption could be issued. By dismissing the case with prejudice, the court ended all judicial proceedings. See In re Estate of Benjamin, 2014 MT 241, ¶ 11, 339 P.3d 1232 (explaining that dismissal with prejudice "is as conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff" (quotation omitted)). Accordingly, if the dismissal order did not vacate the foreclosure judgment, as lender now argues, then lender would have been left with a foreclosure judgment authorizing a judicial sale coupled with a combination of orders ensuring that no judicial sale could ever occur pursuant to that order. That would be an unreasonable interpretation. See Poston Feed Mill Co. v. Leyva, 438 S.W.2d 366, 369 (Tex. Civ. App. 1969) (holding that if trial court's order contradicts or is materially inconsistent with earlier order dealing with same subject matter, latter order operates to implicitly vacate prior order, even if latter order does not so expressly provide).

unclear. Lender argues that if the first foreclosure judgment has not been vacated, then lender was entitled to rely on that judgment when it filed the second foreclosure action. Lender does not explain this in any more detail, and it is not entirely clear whether lender is challenging the trial court's determination that the first foreclosure judgment was vacated: (1) for the purpose of challenging the trial court's dismissal of the second action for lack of the contractually required notice; (2) for the purpose of challenging the trial court's ruling about the limits of lender's potential future remedies; or (3) both.

¶ 15. Moreover, as the trial court noted, lender's post-dismissal actions confirm that it understood the dismissal on the merits to essentially vacate the first foreclosure judgment. In fact, in the hearing below in connection with this second foreclosure action, the lender stated that the first foreclosure judgment had been vacated to allow parties to try to settle, and emphasized that it had chosen a new default in connection with the second foreclosure action.

¶ 16. We do not reach lender's argument that the trial court in November 2010 had no authority to vacate the May 2009 foreclosure judgment because this argument is an impermissible collateral challenge to the first unappealed dismissal order. Lender makes potentially persuasive arguments that the trial court did not have the authority under the circumstances to vacate the final judgment of foreclosure. See U.S. Bank Nat'l Ass'n v. Kimball, 2011 VT 81, ¶ 22, 190 Vt. 210, 27 A.3d 1087 ("Nevertheless, and despite the court's invocation of 'with prejudice' in its dismissal order, U.S. Bank cannot be precluded from pursuing foreclosure on the merits should it be prepared to prove the necessary elements."). But at this point, lender is essentially mounting a collateral attack on a final judgment. We thus do not reach lender's argument that the trial court had no authority to vacate the foreclosure judgment in its dismissal order. Lender did not timely appeal the dismissal order, and we cannot now revisit the issue. Miller v. A.N. Deringer, Inc., 146 Vt. 59, 60, 498 A.2d 501, 502 (1985) ("Judgments from which timely appeals are not taken are conclusive upon the parties.").

¶ 17. Accordingly, we affirm the trial court's conclusion that the May 2009 foreclosure judgment was effectively vacated by the trial court's November 2010 dismissal of the first foreclosure action.

## II. Effect of Dismissal of the First Action "With Prejudice"

¶ 18. The remaining issues in this case all turn on the central question in this case: What is the effect of a court's dismissal on the merits of a foreclosure action, including a contractual claim on the promissory note, on the lender's ability to pursue a later claim for default on the note and foreclosure as a remedy? There is no perfect answer to this question.

8

Although this Court has not previously considered the question,[4] other courts have taken a range of approaches—from concluding that where a lender seeks to accelerate the borrower's repayment obligation on account of a default, a dismissal with prejudice forever precludes a subsequent claim for default on that note, to concluding that the dismissal does not preclude the lender from bringing a subsequent action based on a subsequent default. Each of these approaches is problematic for different reasons, and we adopt a middle path.

¶ 19. The preclusive effect of a judgment is a question of law that we review without deference. Breslin v. Synnott, 2012 VT 57, ¶ 8, 192 Vt. 79, 54 A.3d 525.[5]

---

[4] In U.S. Bank National Ass'n v. Kimball we did state that "[a]bsent adjudication on the underlying indebtedness, the dismissal cannot cancel [the borrower's] obligation arising from an authenticated note, or insulate her from foreclosure proceedings based on proven delinquency." 2011 VT 81, ¶ 23. However, the controversy in Kimball was whether the bank seeking to collect on the mortgage had standing for jurisdictional purposes. The court's dismissal on jurisdictional grounds was not an adjudication upon the merits. Id. ¶ 22; V.R.C.P. 41(b)(3) (stating that involuntary dismissal, other than one for lack of jurisdiction, operates as adjudication upon the merits). For that reason, Kimball provides little pertinent guidance with respect to the issue before us here.

This issue was also raised in Deutsche National Bank v. Pinette, 2016 VT 71, ___ Vt. ___, ___ A.3d ___, but we declined to reach it because it had not been properly preserved.

[5] We note that the trial court invoked equitable considerations in its ruling, reasoning that foreclosure is an equitable remedy. Although we review a court's exercise of its equitable authority deferentially, Currie v. Jané, 2014 VT 106, ¶ 19, 197 Vt. 599, 109 A.3d 876, a court's conclusion that equitable principles may apply is a legal determination that we review without deference. Cf. In re Lyon, 2005 VT 63, ¶ 15, 178 Vt. 232, 882 A.2d 1143. In this case, lender seeks foreclosure as a remedy for borrowers' default on the underlying note. "[F]oreclosure actions are equitable in nature and therefore it is proper for the court to weigh the equities of the situation." Merchs. Bank v. Lambert, 151 Vt. 204, 206, 559 A.2d 665, 666 (1989) (citing Merchs. Bank v. Thibodeau, 143 Vt. 132, 133, 465 A.2d 258, 259 (1983)). But, the court's ability to wield the tools of equity is limited to that aspect of the case that is equitable in nature— lender's claim for relief through foreclosure. To the extent that lender has sought a judgment on the note, the trial court cannot rely on principles of equity to alter borrowers' obligation. Gerety v. Poitras, 126 Vt. 153, 155, 224 A.2d 919, 921 (1966) ("Equity will not afford relief where there is a plain, adequate, and complete remedy at law. And if the complainant does have such remedy, and the main cause of action is of a legal nature, equity has no jurisdiction." (citation omitted)). Because our analysis turns on the enforceability of the note, which is a legal question, we do not consider the trial court's equitable analysis as it relates to the availability and terms of the foreclosure remedy.

¶ 20. Dismissal of a claim "with prejudice" operates as an adjudication "on the merits." Littlefield v. Town of Colchester, 150 Vt. 249, 251, 552 A.2d 785, 786 (1988); see also Black's Law Dictionary 1837 (10th ed. 2014) (defining the term "with prejudice" to mean "[w]ith loss of all rights; in a way that finally disposes of a party's claim and bars any future action on that claim"). Determining the preclusive effect of the dismissal with prejudice of the first action, and the trial court's ruling in this second action, requires application of the principles of claim preclusion. "The rule of claim preclusion applies when the parties, subject matter, and causes of action in a previous litigation, where the court has issued a final judgment, and in a subsequent litigation are the same or substantially identical." Alden v. Alden, 2010 VT 3, ¶ 9, 187 Vt. 591, 992 A.2d 298 (mem.). "It precludes the parties from relitigating not only those claims that were previously litigated, but also those that should have been raised in previous litigation." Id. (quotation omitted).[6] The trial court's dismissal of lender's first foreclosure action thus operates as an adjudication for borrowers on the merits of the claims that were litigated or should have been raised in that action.

¶ 21. This statement of black-letter law does little to advance the analysis. What, exactly, was adjudicated in the first foreclosure action? Whether borrowers were in default on the note on the date of the notice of default that preceded that suit? Whether lender is forever barred from collecting on the note, having accelerated the principal due on the basis of its claim of default? Courts have taken divergent approaches to these questions—none of which is entirely satisfactory.

¶ 22. In one line of cases, courts have held that the dismissal with prejudice operates as an adjudication on the merits with respect to the underlying debt in its entirety. The earliest of these cases is Johnson v. Samson Construction Corp., where the Supreme Judicial Court of

---

[6] By contrast, issue preclusion prevents a party from relitigating an issue that was actually litigated and decided in a prior action. Alden, 2010 VT 3, ¶ 11. Given the nature of the trial court's dismissal of the first action, no specific issues were litigated and decided in borrower's favor. Accordingly, issue preclusion does not apply in this case.

Maine held that a mortgagee "cannot avoid the consequences of [its] procedural default" by attempting to relitigate nonpayments on a note the debt of which had been accelerated in a previous lawsuit dismissed with prejudice. 1997 ME 220, ¶ 8, 704 A.2d 866. After the borrower defaulted on a May 1990 payment, the lender initiated a foreclosure action in August for the full amount due under the note, as permitted by the acceleration clause of the note. In December 1994, the court dismissed the action with prejudice because the mortgagee failed to file a Report of Conference of Counsel. Id. ¶ 3. In August 1995, the mortgagee filed a second suit, alleging failure to make payments from September 1990 onwards and seeking judgment for the "amount due under the Note." Id. ¶ 4. The trial court granted summary judgment to the borrower on the grounds of res judicata. Id. The Maine high court affirmed:

> The promissory note between [the parties] required 240 equal monthly payments of principal and interest. However, the note's acceleration clause provided that "[i]f any default be made in any payment under this Note, and if such default is not made good within thirty (30) days after written notice of same, the entire unpaid principal and accrued interest shall become immediately due and payable without further demand." [The lender's] first cause of action alleged that [borrower] "defaulted on its obligations to the [lender] under the Note" and demanded payment of the entire unpaid principal balance. This suit was an action for the accelerated debt. Once [borrower] triggered the acceleration clause of the note and the entire debt became due, the contract became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the note. The court's dismissal with prejudice of the first action operated as an adjudication on the merits. That judgment bars the complaint in this action which alleges precisely what the complaint in the first action alleged: that [the borrower] defaulted on the note and that [the lender] is entitled to a judgment for the amount due under the note.

Id. ¶ 8 (citations omitted).

¶ 23. More recently, the Ohio Supreme Court reached a similar conclusion. See U.S. Bank Nat'l Ass'n v. Gullotta, 2008-Ohio-6268, 899 N.E.2d 987. In Gullotta, the borrower filed a motion to dismiss the lender's third action for money judgment, foreclosure, and relief—which declared the entire debt was due under an acceleration clause—on the ground that the lender's

11

second suit against him, like the first, had been voluntarily dismissed. Under an Ohio rule, a second voluntary dismissal constitutes an adjudication on the merits. Id. ¶ 6. The trial court found that because the lender's amended complaint included defaults after the second dismissal, res judicata did not apply, as the borrower's obligation to continue making payments would "begin again" in the month following the second dismissal. Id. ¶ 10. The intermediate appeals court affirmed, agreeing claim preclusion did not bar the new complaint because it pled dates of default not litigated in the prior two actions. Id. ¶ 11.

¶ 24. The Ohio Supreme Court reversed. The court explained that the fact that the third complaint listed a default date subsequent to the dismissal of the second complaint was not critical; instead, it emphasized that the underlying note and mortgage "never changed," that in the first action, the bank "accelerated the payments owed and demanded the same principal payment that it demanded in every complaint," that the borrower never made an additional payment after his first default, and that the lender never attempted to reinstate the loan. Id. ¶ 19. The court noted that it was irrelevant that interest was sought only from the period after the second dismissal because from the time of the original breach, the borrower had "owed the entire amount of the principal" the same amount of which was alleged in all three complaints. Id. ¶ 28. The court explained that while generally each missed payment in an installment loan does give rise to a separate cause of action, that rule does not apply where the loan agreement contains an acceleration clause and the lender had invoked that provision to accelerate the borrower's obligation to pay. Id. ¶¶ 29-31.

¶ 25. Although the reasoning of the Ohio and Maine high courts makes some sense, there are at least two significant downsides to this approach: one logical and one practical.

¶ 26. The logical tension in these courts' analyses is that they rely on the fact that lender accelerated the entire debt, even though the court's necessary ruling on the merits—that there has been no default at all—essentially invalidates the lender's acceleration. The mortgage notes in the above cases, like the mortgage note here, afford the lender a right to accelerate the

12

entire principal debt upon default by the borrower. The breach of a covenant, or default, by the borrower is a condition precedent to the acceleration. If the lender brings an action alleging default by the borrower, and the court determines that the borrower is not, in fact, in default— whether after actual adjudication on the merits or by dismissal with prejudice—then the acceleration is invalid. In other words, the adjudication against lender with prejudice, or "on the merits," requires us to treat the first judgment as essentially determining that lender did not establish a default on the note by borrowers as of the date alleged. Under these circumstances, the result of a court's judgment on the merits seems to invalidate the attempted acceleration, not to preserve it as an element of a final judgment that precludes future attempts to collect on the note.

¶ 27.    The practical downside is that this approach deprives the lender of any repayment of principal or interest on a significant loan, while yielding the borrowers a free, or deeply discounted, house. By insulating the borrowers from any legally enforceable obligation to make future payments to lender, this approach imposes on lender a cost for its procedural default that may be wholly disproportionate to the lender's infraction.[7]  In fact, the consequences of such a rule might be to discourage lenders from engaging in the kind of forbearance and negotiation that preceded the trial court's dismissal of the first foreclosure action in this case. Nonetheless, if these perceived inequities necessarily flowed from the parties' contractual arrangement, we would impose them. Arnold v. Cantini, 154 Vt. 142, 145, 573 A.2d 1193, 1195 (1990) (explaining that where contract language is clear parties are bound by the language and "[e]xtraneous circumstances do not alter that meaning"). But, here there is no such contractual provision and, as explained, the logic of the approach is questionable.[8]

---

[7]  It also puts the defaulting borrower in a better position than the borrower who pays a note to its maturity.

[8]  We note that borrowers in this case did not take the position reflected in the Maine and Ohio decisions that a dismissal with prejudice in a case in which the lender has accelerated the principal due on the loan precludes the lender from foreclosing on a mortgage in the future.

¶ 28.    For these reasons, several courts have taken a contrary approach, concluding that claim preclusion does not bar a subsequent foreclosure action following the dismissal on the merits of a first foreclosure action if the second action is predicated on a new and independent default.  The Florida Supreme Court reached this conclusion in Singleton v. Greymar Associates, 882 So. 2d 1004 (Fla. 2003).  In that case, the mortgagee had brought a foreclosure action against the mortgagor predicated on an alleged default arising from a failure to make payments due from September 1, 1999 to February 1, 2000.  After the mortgagee failed to appear at a case-management conference, the trial court dismissed the foreclosure action with prejudice.  The mortgagee then filed a second foreclosure action, alleging a default arising from the mortgagor's failure to make payments from April 1, 2000 onward.  The question before the Florida Supreme Court was whether the dismissal of the first foreclosure action with prejudice barred the second action.  The court quoted approvingly from a lower court's discussion of the question:

> "[I]f the plaintiff in a foreclosure action goes to trial and loses on the merits, we do not believe such plaintiff would be barred from filing a subsequent foreclosure action based upon a subsequent default.  The adjudication merely bars a second action relitigating the same alleged default.  A dismissal with prejudice of the foreclosure action is tantamount to a judgment against the mortgagee. That judgment means that the mortgagee is not entitled to foreclose the mortgage. Such a ruling moots any prayer for a deficiency, since a necessary predicate for a deficiency is an adjudication of foreclosure."

Id. at 1007 (quoting Capital Bank v. Needle, 596 So. 2d 1134, 1138 (Fla. Dist. Ct. App. 1992)).

The Florida Supreme Court explained its rationale:

> While it is true that a foreclosure action and an acceleration of the balance due based upon the same default may bar a subsequent action on that default, an acceleration and foreclosure predicated upon subsequent and different defaults present a separate and distinct issue. . . . For example, a mortgagor may prevail in a foreclosure action by demonstrating that she was not in default on the payments alleged to be in default, or that the mortgagee had waived reliance on the defaults.  In those instances, the mortgagor and mortgagee are simply placed back in the same contractual

Instead, they argued only that lender cannot seek in a future action whatever relief the lender sought in the first foreclosure case—whether attorney's fees or back taxes or interest.

14

relationship with the same continuing obligations. Hence, an adjudication denying acceleration and foreclosure under those circumstances should not bar a subsequent action a year later if the mortgagor ignores her obligations on the mortgage and a valid default can be proven.

This seeming variance from the traditional law of res judicata rests upon a recognition of the unique nature of the mortgage obligation and the continuing obligations of the parties in that relationship. For example, we can envision many instances in which the application of the [contrary view] would result in unjust enrichment or other inequitable results. If res judicata prevented a mortgagee from acting on a subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. The adjudication of the earlier default would essentially insulate [the mortgagor] from future foreclosure actions on the note— merely because [the mortgagor] prevailed in the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because [the mortgagee] failed to prove the earlier alleged default.

Id. at 1007-08 (emphasis added) (citations omitted). Finding "no valid basis for barring mortgagees from challenging subsequent defaults on a mortgage and note solely because they did not prevail in a previous attempted foreclosure based upon a separate alleged default," the court concluded that claim preclusion does not bar a successive foreclosure suit based on a subsequent and separate alleged default. Id. at 1008.

¶ 29. Similarly, in the case of Afolabi v. Atlantic Mortgage & Investment Corp., 849 N.E.2d 1170 (Ind. Ct. App. 2006), the mortgagee's first foreclosure action against the mortgagor had been dismissed with prejudice for failure to prosecute, and several years later, the mortgagee filed a new foreclosure action against the mortgagor, who had not made any payments toward the underlying debt in over ten years. The mortgagor argued that the mortgagee's first action was predicated on an acceleration of all payments due under the note and mortgage and a demand for payment, necessarily including all future payments. Id. at 1174. Because the mortgagee's claim had been dismissed with prejudice, the mortgagor argued, it was barred from pursuing the second claim. Id. The Indiana Court of Appeals rejected this argument, concluding that claim preclusion does not bar successive foreclosure claims, regardless of whether the mortgagee

sought to accelerate payments on the note in the first claim, where subsequent and separate alleged defaults under the note create a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action. Id. at 1175; see also In re Rogers Townshend & Thomas, P.C., 773 S.E.2d 101, 104-08 (N.C. Ct. App. 2015) (holding that rule barring third action after two voluntary dismissals of same claims does not bar third foreclosure action where periods of claimed default were different).

¶ 30. In Fairbank's Capital Corp. v. Milligan, the Third Circuit Court of Appeals considered a similar issue, but with a twist. In that case, the lender and borrower had settled the first foreclosure case and had, in connection with that settlement, stipulated to dismissal of that action with prejudice. 234 F. App'x 21 (3d Cir. 2007). The borrower subsequently fell into default again by failing to pay monthly installments as they came due. The lender gave notice of the default and its intent to accelerate the payment of the remaining principal as authorized by the note if the borrower failed to pay the outstanding amount. When the lender filed an action for the debt and foreclosure of the mortgage, the borrower defended that the dismissal with prejudice of the prior foreclosure action precluded the new one. The Third Circuit found the reasoning of Singleton and Afolabi persuasive, and concluded that the parties' stipulated dismissal with prejudice of the first foreclosure action could not bar a subsequent mortgage foreclosure action based on defaults occurring after dismissal of the first action. Id. at 23. Otherwise, the court reasoned, "it would encourage a delinquent mortgagor to come to settlement with mortgagee on a default in order to later insulate the mortgagor from the consequences of a subsequent default. This is plainly nonsensical." Id. at 24.

¶ 31. While this reasoning is logical, it also raises significant practical problems. Logically, a court's adjudication on the merits in favor of a borrower after the lender asserts a default: establishes the absence of any default; invalidates the lender's attempted acceleration under the note; precludes the lender's attempted foreclosure; and places the parties "back in the same contractual relationship with the same continuing obligations." Singleton, So. 2d at 1007.

But, as a practical matter, if a court's dismissal with prejudice against the lender automatically "unaccelerates" the debt and reinstates the borrower's monthly payment obligation by operation of law with no further action by the lender, unsophisticated borrowers may be inexorably funneled into a new default. How is the borrower to know what principal is due, when it is due, or even where to send the check? This case illustrates these practical problems. Here, borrowers' counsel represented that after the first dismissal borrowers tried to reinstate monthly payments but lender would not confirm the amount owed and would not accept their payment, essentially forcing a "new" default. Expecting ordinary borrowers to know of the opportunity and obligation to reinstate monthly payments after a dismissal of the lender's foreclosure action with prejudice, and to have in hand the information necessary to do so, would ignore the significant asymmetry in sophistication and information intrinsic to most mortgage lender-borrower relationships.

¶ 32.    Moreover, even if we allow a second action based on a new default on the note, accompanied by a second foreclosure action, we still must wrestle with difficult questions. What principal remains due on the note? What interest and penalties, if any, are due? Given that significant time passed between lender's filing of the first complaint (December 2008) and the trial court's dismissal with prejudice (November 2010), how should we account for principal payments that would have been due during that time, or interest that accrued?

¶ 33.    Mindful of the strengths and weaknesses of these two conflicting approaches, we choose a third path that is both logically coherent and practically tenable. First, we conclude that any principal, interest, penalties, or other liabilities from borrower to lender that accrued before the default and attempted acceleration on which the first foreclosure action was predicated have been definitively adjudicated in borrower's favor.[9] No subsequent claim by the lender can

---

[9] During the course of the first action lender invoked a specific date of default of May 1, 2008, and calculated the interest it claimed with reference to that date. However, lender's actual complaint in that first foreclosure, filed December 15, 2008, alleged generally, "Mortgagor(s) has/have failed to make the payments called for under the Note and Mortgage." Lender's

17

incorporate claimed arrearages of any sort that were due from borrower to lender on or before the date of default on which the first action was based. This conclusion flows logically from the adjudication of lender's claim of default on the merits, and is consistent with both approaches outlined above.

¶ 34. Second, during the pendency of the first action that was dismissed with prejudice, no arrearage with respect to principal or interest, or fees or penalties for nonpayment of borrower's monthly obligation, could have accrued. By attempting to accelerate the borrower's debt on the note, albeit ultimately unsuccessfully, lender effectively suspended borrower's obligation to make monthly payments of principal and interest such that, until such monthly obligation was reinstated, borrower cannot be found in default or otherwise penalized for failing to make the payments.

¶ 35. Third, lender cannot claim that any interest on the outstanding principal balance accrued during the pendency of the foreclosure action. That claim effectively extended the term of the loan by placing borrower's obligations into an indefinite legal limbo; the court's dismissal with prejudice reflects that the action was not warranted. If the consequence of the court's effective invalidation of lender's acceleration is to put the parties back in the position they would have been absent the dismissed claim of default, then the period of liability for subsequent interest payments faced by borrower should not be prolonged on account of lender's unwarranted foreclosure action.[10]

---

complaint in the first foreclosure action did not specify a date of default, but alleged that borrowers had failed to make payments due on the note and mortgage. Accordingly, we construe the dismissal with prejudice as a determination that lender had failed to establish a default prior to December 15, 2008, the date of the filing of the complaint. An order dismissing this complaint with prejudice therefore precludes a subsequent claim that borrower had defaulted in any way on or before December 15, 2008.

[10] We realize that the foreclosure action was not, at the time, unwarranted, and that the trial court actually awarded lender a judgment on the note and for foreclosure. But because we are compelled to treat the trial court's unappealed dismissal of lender's complaint as a final adjudication against lender on the merits, we must treat lender's claim as unwarranted.

18

¶ 36. Fourth, borrowers' underlying obligation to pay the balance of principal due (calculated as if all due principal was timely paid up to the date of default upon which the first action was predicated), and to make monthly payments for interest on that outstanding principal, is not extinguished by the judgment with prejudice in the first case. However, borrowers' obligations to pay interest on the outstanding principal and to make monthly payments toward principal and interest are conditioned on thirty-days' notice from lender inviting borrowers to, without penalty, reinstate borrowers' monthly payments of principal and interest as established in the original, pre-claimed-default note and instructing where to send any such payments. In other words, the court's dismissal of the first foreclosure action "with prejudice" can "unaccelerate" the loan and restore borrower's obligation to make monthly payments toward the still-outstanding principal and associated interest, but lender, having accelerated the loan, must provide notice to borrowers of the remaining principal amount due, the monthly payments due, the date payments are due, how to make those payments, and that failure to make the payments when due will constitute a default, with the consequences outlined in the note.

¶ 37. Fifth, although lender is precluded from claiming amounts related to the first default—including interest, penalties and attorney's fees—lender is not precluded from recovering real estate taxes it paid to preserve its security interest in the property. Payment of real estate taxes is not a subject covered in borrowers' note, and the default alleged and adjudicated in borrowers' favor did not rest on delinquent tax payments. The mortgage itself provides that payments made by lender to protect the value of the property may be added to the security interest. In addition, under 12 V.S.A. § 4935, if lender, as mortgagee, pays the taxes on the mortgaged real estate, the amounts paid are "added to and become part of the debt or obligation secured by [its] mortgage." Therefore, lender's ability to recover the amounts paid in taxes is not affected by the dismissal of the first foreclosure action on the merits because the court's ruling that borrowers were not in default on the note does not affect lender's rights arising from the mortgage instrument (as opposed to the note) as well as from statute.

19

¶ 38. We note that in laying out the above, we are not invoking equity to abate a contractually valid interest provision in a defaulted mortgage loan, or to preclude lender from recovering fees or costs to which it is contractually entitled, as lender contends the trial court did. Rather, we are considering as a matter of law lender's enforceable contractual rights to pre-suit arrearages, penalties, and fees, as well as its entitlement to interest during the period of prolongation wrought by lender's ultimately dismissed legal action, given (1) lender's acceleration of the loan; (2) the extended legal proceedings resulting from its actions; and (3) the trial court's unappealed dismissal of lender's first action with prejudice, or on the merits. We also note that this holding is tied to the specific provisions (and gaps) in the parties' agreement. If a mortgage note establishes a procedure for dealing with an attempted acceleration to which a court rules adversely on the merits, that procedure may govern.

### III. Impact on Trial Court's Dismissal of the Second Foreclosure Action

¶ 39. In light of the above, we do not dispute the trial court's conclusion that lender could not pursue a second action on the note with a claim for foreclosure without a new notice of default as required by the parties' agreement as a prerequisite to acceleration of the note and an action for foreclosure. The trial court's dismissal of the first foreclosure action on the merits means that the claimed default underlying that action was conclusively adjudicated against lender. In this second foreclosure case, lender therefore could not rely on its notice of default and acceleration in connection with the first foreclosure case to satisfy its contractual notice obligation.

¶ 40. But, as set forth above, the impediments to lender's second foreclosure action run deeper. Lender may in the future pursue a claim for default on the note and foreclosure of the mortgage based upon a new default, but until borrower is given notice and an opportunity to reinstate the loan, without penalty, lender will have no basis for claiming a default in the first

20

place. For these reasons, we affirm the trial court's dismissal of the second foreclosure action—the one here on appeal.[11]

### IV. Impact of Trial Court's Dismissal of the Second Foreclosure Action

¶ 41. The trial court spent considerable energy thoughtfully attempting to address the prospective application of its dismissal of this second foreclosure action to future actions. Given that the second suit was dismissed primarily due to lender's failure to provide a notice of default, rather than as an adjudication on the merits, the preclusive effect of the second dismissal may not be the same as the preclusive effect of the first—the issue before us in this case. See, e.g., Foster v. Chiles, 467 S.W.3d 911, 916 (Tenn. 2015) (dismissal without prejudice is proper sanction for failure to provide statutory pre-suit notice requirement); accord Neal v. Oakwood Hosp. Corp., 575 N.W.2d 68, 75 (Mich. Ct. App. 1997); Fowler v. White, 85 So. 3d 287, 291 (Miss. 2012). Cf. Kimball, 2011 VT 81, ¶ 23 ("Absent adjudication on the underlying indebtedness, the dismissal [for lack of standing] cannot cancel [borrower's] obligation arising from an authenticated note, or insulate [borrower] from foreclosure proceedings based on proven delinquency.")

¶ 42. In general, "a court should not dictate preclusion consequences at the time of deciding a first action." Alden v. Alden, 2010 VT 3, ¶ 8, 187 Vt. 591, 992 A.2d 298 (mem.). Instead, "the court in the subsequent action is entitled to make its own determination as to the preclusive effect of the earlier judgment." Id. Although there may be circumstances or policy considerations that lead a court to address the preclusive effect of its own decisions, courts should exercise their power to do so "sparingly." Id. (quotation omitted). When a court does address the preclusive effect of its own decision, its ruling "is entirely prudential and not

---

[11] The dissent asserts that our above analysis is dicta. Post, ¶ 50. Our analysis of the precise question before us—whether the trial court properly dismissed the second foreclosure action—turns in part on the fact that the lender had not taken any steps to give notice that its attempt to accelerate the note had failed and to reestablish a payment plan. Although this analysis may also have implications for potential future legal proceedings between these parties, it is directly relevant to our affirmance of the trial court's dismissal of the second action. For that reason, we do not consider it "100% dicta." Post, ¶ 44.

compelled by law," and it is generally "the duty of the second trial court—which knows both what the earlier finding was and how it relates to a later case—to independently determine what preclusive effect a prior judgment may be given." Id. (quotation omitted). For these reasons, we do not here attempt to address the impact of the trial court's dismissal of the second foreclosure action on future scenarios that have yet to arise.

¶ 43. For the above reasons, we affirm the trial court's dismissal of this foreclosure action.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 44. **DOOLEY, J., dissenting.** I agree with the majority that the trial court was correct to conclude that the May 2009 foreclosure judgment was vacated by the November 2010 dismissal of the first foreclosure action. However, I cannot agree with their answer to the "central question" of this case; that is, whether subsequent claims for default on a note are permissible when a lender has previously accelerated a borrower's repayment obligations, brought suit for the entire amount due on the note, failed to prosecute the action, and had it dismissed with prejudice. Ante, ¶ 18. Because any answer to the "central question" is 100% dicta, I would not answer it. If we have to answer it, I would say that such claims are not permissible. If we have to rule on the merits, I would adopt the reasoning of the Supreme Courts of Ohio and Maine, and hold that no subsequent missed payments under an accelerated note, regardless of whether they occurred before or after an action adjudicating foreclosure, can give rise to a new claim that would save lender's case from dismissal on res judicata grounds, absent an indication the parties had modified the terms of the agreement or the lender had reinstated the loan, neither of which is present in the instant case. Accordingly, I dissent.

22

¶ 45.    At the outset, I view the context of this case very differently than the majority. The majority states its context as a practical downside to full application of claim preclusion in this case:

> The practical downside is that this approach deprives the lender of any repayment of principal or interest on a significant loan, while yielding the borrowers a free, or deeply discounted, house. By insulating the borrowers from any legally enforceable obligation to make future payments to lender, this approach imposes on lender a cost for its procedural default that may be wholly disproportionate to the lender's infraction. In fact, the consequences of such a rule might be to discourage lenders from engaging in the kind of forbearance and negotiation that preceded the trial court's dismissal of the first foreclosure action in this case.

Ante, ¶ 27 (footnote omitted). This "practical downside" analysis is persuasively critiqued in a comment in the Yale Law Journal:

> Eight years after the start of America's housing crisis, state courts are increasingly confronting an unanticipated consequence; what happens when a bank brings a foreclosure suit and loses? Well-established legal principles seem to provide a clear answer: the homeowner keeps her house, and res judicata bars any future suit to foreclose on the home. Yet state courts around the country resist this outcome.
>
> . . . .
>
> When addressing faulty foreclosures, courts are afraid to bar future attempts to foreclose—that is, afraid of giving borrowers "free houses." While courts rarely explain the reasoning behind this aversion, it seems to arise from a reflexive belief that such an outcome would be unjust. Courts are therefore quick to sidestep well-established principles of res judicata in favor of ad hoc measures meant to protect banks against the specter of "free houses."
>
> This Comment argues that this approach is misguided; courts should issue final judgments in favor of homeowners in cases where banks fail to prove the elements required for foreclosure. Furthermore, these judgments should have res judicata effect—thus giving homeowners "free houses." This approach has several benefits: it is consistent with longstanding res judicata principles in other forms of civil litigation; it provides a necessary market-correcting incentive to promote greater responsibility among foreclosure litigators, and it alleviates the tremendous costs of successive foreclosure proceedings.

23

M. Wachspress, et al., Comment, In Defense of "Free Houses", 125 Yale L.J. 1115, 1115-16 (2016) (footnote omitted).

¶ 46.    The analysis captures exactly what is occurring in this case.  While I acknowledge the majority's analysis is more creative than that in other cases rejecting the effect of claim preclusion, and may be a compromise of sorts, it is not consistent with settled claim preclusion law, gives the lender a windfall it doesn't deserve and, most important, lets lender's counsel avoid most of the consequences of the way it practices law in our courts.

¶ 47.    It is the last reason that particularly motivates this dissent.  I doubt a loss in this case will have much effect on lender, which, by its own estimation, has serviced approximately 1.65 million loans, totaling $351 billion dollars.  Cenlar Ratings: Fitch Affirms Cenlar FSB's U.S. RMBs Servicer Ratings, Cenlar (Dec. 8, 2015), http://www.cenlar.com/about/ratings [https://perma.cc/8GWL-6ZV5].  But the default here was not caused by lender; instead it was caused by the inaction of lender's lawyers.  Lender's counsel, Schechtman Halperin Savage LLP—who also served as counsel to lender in Deutsche Bank Nat'l Trust Co. v. Pinette, 2016 VT 71, ___ Vt. ___, ___ A.3d ___, a very similar case—emphasizes that it has "conducted thousands of foreclosures throughout Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island and Vermont."  Practice Areas: Foreclosure and Default Servicing, Shechtman Halperin Savage LLP (2016), http://www.shslawfirm.com/ practice-areas/foreclosure-and-default-servicing [https://perma.cc/2DSX-R683].  The firm is apparently what has become known as a foreclosure mill.

¶ 48.    The modus operandi of the law firm, at least as demonstrated in this case and Pinette, is to deal with obstacles in its handling of foreclosure cases by ignoring those obstacles and filing a new mortgage foreclosure action essentially identical to the one it had already filed.  In Pinette, the firm filed a foreclosure action which was dismissed because it failed to file for a default judgment as ordered by the court and responded by filing a new mortgage foreclosure action.  This one was dismissed with prejudice for failure to prosecute.  Instead of seeking relief

24

from the dismissal, the firm again filed a new mortgage foreclosure action. When the mortgagor moved to dismiss claiming the new action was precluded by res judicata, the firm failed to answer the motion, and the court dismissed the action. Only then did the firm come awake and move to reopen. When it lost in the trial court again, the firm appealed to this Court and attempted to file in this Court a document critical to its appeal theory even though it had never been presented to the trial court. Pinette, 2016 VT 71, ¶ 15. The history of this case has fewer twists and turns, but the conduct is consistent. The first foreclosure action was dismissed with prejudice when the firm failed to appear in person or by telephone at a status conference. Id. ¶ 4. The firm did not move to reopen or appeal the dismissal. Id. ¶ 5. Instead it filed a new foreclosure action alleging a new default, but provided defendant with no new notice of default.

¶ 49. Allowing the firm's modus operandi is inconsistent with every one of the policy reasons that underlie the doctrine of claim preclusion: "(1) to conserve the resources of courts and litigants by protecting them against piecemeal or repetitive litigation; (2) to prevent vexatious litigation; (3) to promote the finality of judgments and encourage reliance on judicial decisions; and (4) to decrease the chances of inconsistent adjudication." In re Tariff Filing of Cent. Vt. Pub. Serv. Corp., 172 Vt. 14, 20, 769 A.2d 668, 673 (2001). Fundamentally what the firm's litigation strategy seeks is inconsistent adjudication.

¶ 50. The majority argues that fully enforcing claim preclusion against plaintiff will result in lenders refusing to negotiate settlements. The dismissals in these cases have nothing to do with the substance of the lenders' position or actions, and certainly nothing about whether they should enter into forbearance agreements with borrowers. Instead, they have everything to do with how counsel for the lender engages in litigation and fulfills its obligation to the trial courts. On this basis, any remedy we impose is not disproportionate to the actions and inaction that caused the remedy. We need to send a clear message to counsel and its clients that these methods of conducting litigation are unacceptable and will not get them the remedies they seek

25

even in part. The message should not be that they may file foreclosure action after foreclosure action until they finally win.

¶ 51. Having addressed the difference of perspective of what is at stake in this litigation, I return to my first point. As the majority recognizes in its discussion of Alden v. Alden, it is inappropriate to determine the preclusive effect of a judgment in a case before the court on a future action. 2010 VT 3, 187 Vt. 591, 992 A.2d 298 (mem.). Even though it affirms the superior court dismissal in this case, the majority opinion violates the Alden rule and goes far beyond determining the preclusive effect of the judgment in this case or in the earlier case with respect to a new mortgage foreclosure action. It instructs the plaintiff on how to structure its actions and mortgage foreclosure complaint so it can prevail in the next mortgage foreclosure action. It is an exercise in dicta that does not have precedential effect.

¶ 52. I join the majority in voting to affirm the decision of the superior court without that court's dicta about what it might do if lender brings another foreclosure action. For the same reason as I believe the trial court cannot bind a future trial judge on how to rule on a new foreclosure action, I do not believe it is appropriate for this Court to do exactly the same thing.[12] Lender is not entitled to a lesson in how to get it right. The clear message should be that counsel must stop the action and inaction that creates the dismissals in the first instance.

¶ 53. Because, consistent with my perspective view, I disagree with the majority's dicta on how lender can be successful in the next mortgage foreclosure action, I will address the merits of the "central question," recognizing that my view is also dicta. I have addressed its "practical downside." I now address the "logical tension." My point here is that the majority's remedy is inconsistent with settled claim preclusion law.

---

[12] The posture of this case explains why I would not hold that borrowers are prevented from obtaining a full claim preclusion remedy because their counsel stated that he was not arguing that a dismissal with prejudice of a foreclosure "means you can never foreclose on a mortgage again." This was a statement about what should happen in a new future foreclosure action, a subject not before the court. It was impossible for counsel to predict what the superior court would say about the availability of a third foreclosure action and certainly was impossible to predict the majority's dicta on the subject.

26

¶ 54.    This case is fundamentally an action on a note.  If borrowers owe money under the note, and fail to pay under the terms of the note, lender can obtain a judgment for that amount and can foreclose on the mortgage property to ensure payment of the money owed.  If borrowers owe no money on the note, the security represented by the mortgage is of no effect and lender cannot foreclose.   In the first action, the complaint alleged "Mortgagor(s) has/have failed to make the payments called for under the Note and Mortgage" and "The failure of Mortgagor(s) to make payments as set forth herein, constitutes a breach of the subject Note and mortgage held by Plaintiff."  It repeated these claims in Count II of the complaint.  In the remedies section, lender sought an order that "defendants . . .  pay to the Clerk of the Court for the benefit of plaintiff all amounts due and to become due on the Note and Mortgage, with interest thereon, together with sums expended, reasonable attorney's fees and costs."  It also requested the court to "award deficiency judgment against defendants for any amounts due and owing under the Note after disposition of the Mortgaged premises and application of the proceeds from that disposition to the debt of defendant, if applicable by law."  There is nothing in the complaint that mentions borrower's obligation to make monthly payments or describes acceleration of those payments.

¶ 55.    The most persuasive of the cases dealing with this issue is <u>Johnson v. Samson Construction Corp.</u>, where the Supreme Judicial Court of Maine held that a mortgagee "cannot avoid the consequences of [its] procedural default" by attempting to relitigate nonpayments on a note the debt of which had been accelerated in a previous lawsuit dismissed with prejudice. 1997 ME 220, ¶ 8, 704 A.2d 866.  The heart of the Maine Court's analysis was as follows:

> [Lender's] first cause of action alleged that [borrower] "defaulted on its obligations to the Plaintiff under the Note" and demanded payment of the entire unpaid principal balance.  This suit was an action for the accelerated debt.  Once [lender] triggered the acceleration clause of the note and the entire debt became due, the contract became indivisible.  The obligations to pay each installment merged into one obligation to pay the entire balance on the note.  The court's dismissal with prejudice of the first action operated "as an adjudication on the merits."  That judgment bars the complaint in this action which alleges precisely what the complaint in the first action alleged: that borrower defaulted on the

27

note and that lender is entitled to a judgment for the amount due under the note.

Id. (citations omitted). The Johnson analysis is explained in more detail in U.S. National Bank v. Gullotta, 2008-Ohio-6268, 899 N.E.2d 987. The analysis in both cases applies here.

¶ 56. I recognize there are conflicting decisions, but they are far less persuasive. They are examples of the Yale Law Review's article's description of "Courts [that] are therefore quick to sidestep well-established principles of res judicata in favor of ad hoc measures meant to protect banks against the specter of 'free houses.' " Wachspress et al., supra, at 1115-16. The leading case is Singleton v. Greymar Associates, 882 So. 2d 1004 (Fla. 2003), which acknowledges that it is creating a separate rule of claim preclusion for mortgage foreclosure cases:

> This seeming variance from the traditional law of res judicata rests upon a recognition of the unique nature of the mortgage obligation and the continuing obligations of the parties in that relationship. For example, we can envision many instances in which the application of the Stadler decision would result in unjust enrichment or other inequitable results. If res judicata prevented a mortgagee from acting on a subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. The adjudication of the earlier default would essentially insulate her from future foreclosure actions on the note—merely because she prevailed in the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because he failed to prove the earlier alleged default.

Id. at 1007-08.

¶ 57. The decision is explained at least in part because there was no claim for judgment on the note in the first action, id. at 1007, and the case is analyzed as an equitable mortgage foreclosure case and not, first and foremost, as an action on the note with the mortgage as security. There is no analysis of how there can be a new default on an accelerated note. Apparently "new default" are a form of magic words, and the mortgagee faces no adverse

consequences, either in the availability of foreclosure or in the sum it can recover, as a result of the dismissal of the first foreclosure action.

¶ 58.   This leads me to the majority's "compromise."  In support of its position that dismissal of the first complaint with prejudice did not preclude a second foreclosure action, the majority argues that when a court delivers judgment in a case where a lender has sought to accelerate the entire debt, be it through a full adjudication on the merits or a dismissal for failure to prosecute, the court has effectively determined that the borrower "is not, in fact, in default." Ante, ¶ 26.  It goes on to state that because default by the borrower is a "condition precedent to the acceleration," a judgment for the borrower "seems to invalidate the attempted acceleration, not [] preserve it as an element of a final judgment that precludes future attempts to collect on the note." Ante, ¶ 26.

¶ 59.   There is nothing in the complaint that is consistent with this theory.  It does not seek judicial endorsement of its decision to accelerate that note; instead it seeks a judgment for the entire unpaid amount of the note, including principal that would come due in the future if plaintiff never accelerated.[13]   The majority's description exactly fits a situation where, after default on one or more monthly obligations, the plaintiff declares a default but does not accelerate the payment obligation and sues to collect the unpaid installments and foreclose the mortgage as security for the payment of those installments.  In such a situation, if the action were dismissed with prejudice, plaintiff would lose exactly what it sought—the unpaid installments— and could proceed to declare a new default if later installments were unpaid and, at its option, accelerate the payment obligation.  In this case, plaintiff sought the entire amount due under the note, together with interest and fees, and lost.  Having put the entire amount in issue, the dismissal of the case necessarily precludes recovery of any of that amount and, therefore, the

---

[13]  Nor does the note in this case contain an authorization for plaintiff to "unaccelerate" the note without the consent of defendant.  This distinguishes this case from Deutsche Bank Trust Co. v. Beauvais, 188 So. 3d 938, 946-49 (Fla. Dist. Ct. App. 2016), which holds that the terms of the note and mortgage do allow for unilateral unacceleration.

mortgage foreclosure. As the Ohio Supreme Court noted, accepting the majority's position "would be like allowing a plaintiff in a personal-injury case to save his claim from the [preclusion] . . . rule by amending his complaint to forgo a couple of months of lost wages." Gullotta, 2008-Ohio-6268, ¶ 37.

¶ 60. In summary, nothing about the facts of this case should compels us to find an exception to the long established policies undergirding the doctrine of res judicata. Lender had ample opportunities to pursue its claims. Lender alone chose to accelerate defendants' payment obligations under the note and claim all amounts due in both complaints, as well as to miss the status conference that led the trial court to dismiss the initial action. Borrowers have been subjected to ongoing litigation in this matter since 2008; our judicial system has borne the burden and costs associated with lender's "inadvertence or mistake[s]." Lender and its counsel are sophisticated entities, well-versed in the Vermont foreclosure process, and have shown no justification for a deviation from long-standing principles of claim preclusion, the enforcement of which is "essential to the maintenance of social order," to securing the "peace and repose of society", and to enhancing public confidence in judicial tribunals. Nevada v. United States, 463 U.S. 110, 129 (1983). "[P]ublic policy dictates that there be an end [to this] litigation." Faulkner v. Caledonia Cty. Fair Ass'n, 2004 VT 123, ¶ 10, 178 Vt. 51, 869 A.2d 103 (quotation omitted).

¶ 61. I dissent.

_____
Associate Justice