NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 54

No. 25-AP-001

| | |
|---|---|
| Ditech Financial LLC | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Civil Division |
| | |
| Karen Brisson a/k/a Karen Curavoo et al. | June Term, 2025 |

Alexander N. Burke, J.

Sheldon M. Katz of Brock & Scott, PLLC, Plainville, Massachusetts, for Plaintiff-Appellant.

Karen Brisson, Pro Se, Weybridge, Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.    **CARROLL, J.**   In this foreclosure action, plaintiff Ditech Financial LLC appeals the trial court's order dismissing the case with prejudice and vacating the foreclosure judgment for plaintiff's failure to prosecute. We agree with plaintiff that the court abused its discretion in dismissing the case for want of prosecution and thus reverse the court's order, reinstate the judgment of foreclosure, and remand for further proceedings consistent with this opinion.

¶ 2.    In 2015, this action commenced when plaintiff's predecessor-in-interest Green Tree Servicing LLC filed this foreclosure action against defendant Karen Brisson. In May 2018, the court held a trial on the merits and in June 2018, issued a ruling in plaintiff's favor. The trial court found that in 2007, defendant obtained a loan and mortgage with Chittenden Trust Company.[1] In

---

[1] Defendant obtained the loan and mortgage with her then-boyfriend. He was named as a defendant in the foreclosure action but was later dismissed from this case.

2009, the mortgage was assigned to Everbank and in 2014 it was assigned to Green Tree Servicing LLC. Green Tree became Ditech. The court found that defendant had defaulted, and that proper notice of default was sent. The court also found, by a preponderance of the evidence, that plaintiff held the original note at the time of filing, that defendant signed the original note, and that plaintiff held the original note at the time of trial. The court concluded that the evidence corroborated the amount due "in most respects," but reduced the amount based on the lack of proof of insurance payments by plaintiff. The court rejected defendant's challenges that the mortgage and note were fake, that the assignment prior to the commencement of the action was invalid, that the cost of insurance was unreasonably high, and that plaintiff failed to respond to requests for debt verification.

¶ 3. The court issued a judgment and decree of foreclosure by judicial sale in plaintiff's favor. The judgment indicated the current amount due, including the principal amount, the accrued interest, filing fees, and legal fees. The judgment also provided for a six-month redemption period "payable to court" in addition to the right to redeem "up to the date of judicial sale" provided under 12 V.S.A. § 4949. See 12 V.S.A. § 4949(a) ("The mortgagor is entitled to redeem the premises at any time prior to the public sale by paying the full amount due under the judgment order . . . ."). The judgment stated that if defendant failed to redeem, the mortgaged property would be sold by public sale. The redemption period was set to expire on February 17, 2019.[2]

¶ 4. Defendant sought permission to appeal the foreclosure judgment, which the court denied. See 12 V.S.A. § 4939 ("When a judgment is for the foreclosure of a mortgage, permission of the court shall be required for review.").[3]

---

[2] This expiration date reflects the corrected date pursuant to the court's October 2018 order. See V.R.C.P. 60(a); see also infra, n.3.

[3] Defendant also moved to stay the judgment pending appeal and to amend the judgment on the grounds that the judgment misstated the date and that the requirements of Rule 80.1(g)(2)(a) had not been satisfied. See V.R.C.P. 80.1(g)(2)(a) ("A judgment and decree of foreclosure may not issue, or if a decree has been issued a sale will not be confirmed by the court, until plaintiff's

¶ 5.      In April 2019, after the redemption period expired, but before the sale was held, the case was dismissed without prejudice after defendant notified the court of her bankruptcy petition. In August 2021, after defendant was discharged from bankruptcy, plaintiff moved to reopen the case and set a new sale deadline.  The court granted plaintiff's motion to reopen the case and vacated the dismissal.  By agreement of the parties, the case was referred to mediation.  Mediation was unsuccessful.

¶ 6.      In November 2023, plaintiff moved for substitution of parties under Vermont Rule of Civil Procedure 25(c) and to extend the sale deadline.  Plaintiff represented that the following assignments of the mortgage took place after the foreclosure judgment: (1) in October 2019, Ditech assigned the mortgage to New Residential Mortgage LLC; and (2) in 2022, NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing assigned the mortgage to US Bank Trust National Association, as Owner Trustee for VRMTG Asset Trust.  Plaintiff asserted that US Bank Trust National Association, in its capacity as Owner Trustee for VRMTG Asset Trust, was "the holder of the note and mortgage and is otherwise entitled to enforce the mortgage note pursuant to the Uniform Commercial Code."  In response, defendant moved to dismiss plaintiff's motions arguing plaintiff lacked standing to file the motions because it no longer had "any right, title or interest" in the mortgage.  Defendant further asserted that plaintiff had also gone through bankruptcy and no longer existed.

¶ 7.      The court granted plaintiff's motion, substituting US Bank Trust National Association as plaintiff.  The court concluded that plaintiff had demonstrated US Bank Trust National Association was "the real party in interest as the owner of the mortgage" and that plaintiff "moved to substitute the real party in interest for the original party as allowed by Rule 25."  The

counsel has submitted a Certification of Counsel . . . .").  Both motions were denied.  In response to defendant's subsequent motion to reconsider, the court again denied the argument about the certification of counsel but corrected the clerical mistake in the date of judgment and the redemption expiration.  See supra, n.2.

3

court also granted plaintiff's motion to extend the sale deadline, which was set for June 21, 2024. The court denied defendant's motion to dismiss the motions, concluding that the post-judgment transfers of interest did not affect plaintiff's standing because plaintiff held the mortgage and note at the time the action commenced.

¶ 8.     In March 2024, defendant moved for reconsideration of the court's ruling on plaintiff's motion to substitute and defendant's motion to dismiss the motions.  Defendant argued that there was a gap in the mortgage assignments described by plaintiff, rendering them invalid. In response, plaintiff agreed that the court should reconsider its decision to substitute parties, but on an alternative ground: the post-judgment assignments were invalid because the mortgage and note merged into the foreclosure judgment.  Plaintiff informed the court that the note was lost after the foreclosure judgment was entered, and therefore could not be transferred to US Bank Trust National Association as plaintiff had previously asserted in its motion to substitute parties. However, plaintiff argued that it could continue as the named plaintiff because it was entitled to enforce the foreclosure judgment in its name.

¶ 9.     In July 2024, the court granted defendant's motion to reconsider substitution of parties and vacated its order substituting US Bank Trust National Association as the plaintiff.  The court did not rule on defendant's motion to reconsider her motion to dismiss plaintiff's motions. The court concluded the parties agreed that US Bank Trust National Association was not the real party in interest, but that "a glaring question" remained "as to who the real party in interest is." The court reserved judgment on the issue of whether the note and mortgage merged into the judgment and set a hearing for the parties to present evidence on the real party in interest.  The court stated that "the action w[ould] be dismissed for failure to prosecute" if plaintiff "fail[ed] to prove who the real party in interest is at the hearing."

¶ 10.    A hearing was held in August 2024, following which the court dismissed the case. The court found that in October 2019, plaintiff executed a limited power of attorney authorizing

4

Shellpoint Mortgage Servicing to act with regard to plaintiff's mortgage assets. The court concluded, however, that the power of attorney "does not prove that at the present moment, Shellpoint is the real party in interest" because the agreement was not accompanied by a defined list of assets and the evidence did not establish whether the power of attorney was still in force. The court also concluded that, assuming without deciding that the mortgage and note merged into the judgment, plaintiff conceded that "Ditech no longer exists" and had gone through bankruptcy. Accordingly, it was not clear that Shellpoint controlled the interest in the foreclosure judgment. The court accepted plaintiff's explanation that it made a mistake with regard to the post-judgment assignments of the note. However, it noted that defendant continued to receive letters from Shellpoint indicating that different entities owned her loan, which made it difficult for her to determine who the real party in interest was or attempt to negotiate a settlement.

¶ 11. The court concluded that plaintiff failed to prove that it, or Shellpoint, emerged from bankruptcy with continued control in the foreclosure judgment. It rejected plaintiff's argument that Vermont Rule of Civil Procedure 25(c) permitted the action to continue with the original party plaintiff because the original party plaintiff "does not exist." The court concluded that "[a]fter abandoning its own motion to substitute US Bank as plaintiff, upon order of the court to prove who should substitute for plaintiff, plaintiff has now failed to prove who the real party in interest is." Accordingly, as it had warned in its July 2024 order, the court dismissed the case with prejudice and vacated the foreclosure judgment.

¶ 12. Plaintiff moved to amend the judgment under Civil Rule 59(e). Plaintiff requested that the court reinstate the judgment because the original note had been located, the power of attorney authorized Shellpoint to act on plaintiff's behalf, and there was no authority in statute or rule for the court to dismiss the case or vacate the foreclosure judgment. The court denied plaintiff's motion, concluding plaintiff could have presented evidence of the original note at the August 2024 hearing, plaintiff failed to demonstrate how the evidence presented at the hearing

5

"proved who the real party in interest is or that the court erred in its decision," and plaintiff was on notice that a failure to prove the real party in interest would result in dismissal with prejudice, which required the foreclosure judgment to be vacated. This appeal followed.

¶ 13. On appeal, plaintiff argues that the court lacked authority to dismiss the case with prejudice or vacate the foreclosure judgmentunder the applicable civil rules. Plaintiff further argues that under the "merger doctrine," post-judgment assignments or temporary loss of the note do not prevent plaintiff from enforcing the judgment. We agree that the court erred in dismissing the case with prejudice and vacating the foreclosure judgment, and therefore do not address plaintiff's argument concerning the merger doctrine.

¶ 14. The court dismissed the case for want of prosecution, but its concern was the real party in interest. We thus begin our discussion with the applicable rules governing the real party in interest. Civil Rule 17(a) requires that an action "be prosecuted in the name of the real party in interest." "[I]t is not necessarily the person who has the ultimate beneficial interest who must sue but rather the person who, as a matter of substantive law, has the right to be enforced." Reporter's Notes, V.R.C.P. 17. Rule 17(a) applies at the time the action commences. Hilbrands v. Far E. Trading Co., 509 F.2d 1321, 1323 (9th Cir. 1975); see also Smedberg v. Detlef's Custodial Serv., Inc., 2007 VT 99, ¶ 30, 182 Vt. 349, 940 A.2d 674 (noting V.R.C.P. 17(a) "must be construed to the same effect" as "identical" federal rule); Reporter's Notes, V.R.C.P. 17 ("This rule is based on Federal Rule 17, as modified in Maine Rule 17."). It "is used to correct an action that was filed and then maintained by the wrong party, or was filed in the name of the wrong party." Mortg. Elec. Registration Sys., Inc. v. Saunders, 2010 ME 79, ¶ 17, 2 A.3d 289. The purpose of the rule is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." F.R.C.P. 17, Advisory Committee's Notes to 1966 Amendment.

¶ 15. In its July 2018 merits ruling, the court decided that plaintiff had standing to enforce the mortgage and note and was otherwise the real party in interest at the time the action commenced. See Wells Fargo Bank Minn., N.A. v. Rouleau, 2012 VT 19, ¶ 11, 191 Vt. 302, 46 A.3d 905 ("[P]laintiff in an enforcement action establishes its standing if it is in possession of the original note and mortgage at the time the complaint is filed and the instruments are made payable to the plaintiff."); U.S. Bank Nat. Ass'n v. Kimball, 2011 VT 81, ¶¶ 13-14, 190 Vt. 210, 27 A.3d 1087 (listing requirements plaintiff must show to establish standing in foreclosure action, i.e., the "right to enforce the note" "at the time the complaint was filed"). In her 2023 motion to dismiss plaintiff's motions, defendant did not challenge plaintiff's standing at the time the action commenced, nor did the court consider whether plaintiff was the proper plaintiff to have commenced the suit. Thus, Rule 17 was inapplicable.

¶ 16. Rather, to the extent a transfer occurred during the pendency of the proceedings, Civil Rule 25(c) governs. Rule 25(c) provides "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." The rule "expressly permits parties to continue in an action, even if they do not remain the real party in interest, as long as the cause of action itself survives the transfer to the new party." ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc., 53 F.3d 186, 191 (8th Cir. 1995) (emphasis omitted); see Reporter's Notes, V.R.C.P. 25 (stating that V.R.C.P. 25 "is virtually identical to Federal Rule 25" and although it had "no express equivalent in prior Vermont practice," it "serve[s] the salutary purpose of preventing technical dismissals"). "An order of joinder [or substitution] is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation." 7 C. Wright & A. Miller, Federal Practice & Procedure § 1958 (3d ed. 2025) (explaining Federal Rule 25(c) "does not require that anything be done after an interest has been transferred"). The rule "is not designed to create new relationships among

7

parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands." Collateral Control Corp. v. Deal (In re Covington Grain Co.), 638 F.2d 1362, 1364 (5th Cir. 1981).

¶ 17. The rule expressly allows the original party to continue unless the court, upon motion, requires otherwise. See, e.g., Froning's, Inc. v. Johnston Feed Serv., Inc., 568 F.2d 109, 110 (8th Cir. 1978) ("In the absence of such a motion it is not error to continue the action in the name of the original parties."); Liberty Broad. Sys., Inc. v. Albertson, 15 F.R.D. 121, 122 (W.D.N.Y. 1953) (rejecting argument "that plaintiff [was] not the proper party by reason of its adjudication as a bankrupt and the appointment of a 'receiver or trustee,' " explaining that"[n]o motion has been made for substitution, so that it is proper to continue the action as originally instituted"); Singer Hous. Co. v. Seven Lakes Venture, 466 F. Supp. 369, 378 (D. Colo. 1979) (reaching similar conclusion). Here, there was no pending motion for substitution of parties after defendant asked the court to reconsider; plaintiff agreed and withdrew its request for substitution; and the court vacated its order substituting US Bank Trust National Association as plaintiff. Accordingly, to the extent there was a transfer of interest, the action could continue in plaintiff's name, unless upon motion the court required otherwise.

¶ 18. The court rejected the argument that the action could proceed through the original party on the ground that the original party no longer "exists." We note, however, that "a time-honored feature of the corporate device is that a corporate entity may be utterly dead for most purposes, yet have enough life remaining to litigate its actions. All that is necessary is a statute so providing." Def. Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 634-35 (1949); see also Froning's, Inc., 568 F.2d at 110 (recognizing "[d]issolved corporations have been allowed to maintain suit when the dissolution does not abate their authority to do so under state law"); 7 C. Wright & A. Miller, supra, § 1958. Accordingly, the conclusion that plaintiff is no longer in business, by itself, does not bar plaintiff from continuing as the original party plaintiff under Civil

8

Rule 25. While it is uncontested that Ditech went bankrupt and is no longer servicing mortgages, the parties dispute on appeal the effect of these facts on Ditech's status and ability to proceed as the plaintiff in this case and also what law governs Ditech's status and ability to maintain suit. These issues were not presented to the court below and involve facts that are not in the record. We therefore will not consider them for the first time on appeal. See Hoover v. Hoover, 171 Vt. 256, 258, 764 A.2d 1192, 1193 (2000) (recognizing "our review is confined to the record" and "[o]n appeal, we cannot consider facts not in the record"). The record before us does not support dismissal under Rule 25.[4]

¶ 19. The court did not rely on Rule 25 in dismissing the action, however. Rather, it dismissed the case and vacated the foreclosure judgment for failure to prosecute because plaintiff failed to comply with the court's August 2024 order to prove, after a hearing, who the real party in interest was. Although it did not cite the rule, the court was plainly referring to Civil Rule 41(b)(2). See Hayes v. Harwood, 141 Vt. 308, 309, 448 A.2d 799, 799 (1982) ("[I]t is the substance of the operative instrument that determines its judicial effect, not its label."). Further, the court clarified in its denial of plaintiff's motion to amend the judgment that the court "is authorized to dismiss cases for failure to prosecute when a party does not comply with the court's order," citing Cenlar FSB v. Malenfant, 2016 VT 93, ¶¶ 5, 14, 203 Vt. 23, 151 A.3d 778.[5]

---

[4] Defendant moved to dismiss this appeal on similar grounds. Defendant's arguments essentially ask us to accept the trial court's conclusion that plaintiff no longer exists as a bar on plaintiff's right to appeal that decision. Defendant's motion to dismiss is denied.

Plaintiff moved to strike defendant's reply to plaintiff's response to defendant's motion to dismiss as untimely. Defendant moved to retroactively extend the time to file her reply. Plaintiff's motion to strike is denied. Defendant's motion for a retroactive extension is thus denied as moot.

[5] For the first time in its reply brief and in response to defendant's motion to dismiss the appeal, plaintiff argues the court's failure to cite specific authority deprived it of due process. "[I]ssues not raised in an appellant's original brief may not be raised for the first time in a reply brief." Maynard v. Travelers Ins. Co., 149 Vt. 158, 160, 540 A.2d 1032, 1033 (1987). We accordingly do not consider this argument.

¶ 20.    We review the court's decision to dismiss for failure to prosecute under an abuse of discretion standard.  Cap. Sav. Bank & Tr. Co. v. Hammett, 95 Vt. 47, 50, 112 A. 360, 361 (1921).  "We will find an abuse of discretion where a court has either withheld its discretion entirely or exercised its discretion for clearly untenable reasons or to a clearly untenable extent."  Bank of Am., N.A. v. O'Kelly, 2018 VT 71, ¶ 11, 208 Vt. 20, 194 A.3d 746 (quotation omitted).  We agree with plaintiff that there was no failure on its part to prosecute the case, and thus, conclude the court exceeded its discretion by dismissing the case with prejudice.

¶ 21.    Rule 41(b)(2) provides: "For failure of the plaintiff to prosecute or to comply with [the Vermont Rules of Civil Procedure] or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."  Unless the trial court specifically says otherwise, dismissal under Rule 41 is considered an adjudication on the merits.  Deutsche Bank v. Pinette, 2016 VT 71, ¶ 18, 202 Vt. 328, 149 A.3d 479.  The rule allows the "trial court to dismiss a case on account of the plaintiff's failure to pursue it, or because the plaintiff has not complied with a court order, including failing to attend a scheduled court hearing."  Ying Ji v. Heide, 2013 VT 81, ¶ 5, 194 Vt. 546, 82 A.3d 1160; cf. Cap. Sav. Bank & Tr. Co., 95 Vt. at 50, 112 A. at 361 (upholding trial court's dismissal for want of prosecution under former county court rule after case "slumber[ed]" on docket for five years "indicat[ing] a lack of diligence" considering lack of explanation); see also Reporter's Notes, V.R.C.P. 41 (noting "motion to dismiss for lack of prosecution or noncompliance with the rules was recognized in prior Vermont practice").  This "general power" of the court to dismiss a case for want of prosecution "is limited by several important considerations" including that "the law favors disposition of cases on their merits," that "sanctions against litigants should be proportionate to their offenses" and "appropriate to the circumstances," and that "courts must be wary of imposing sanctions on a party without notice and an opportunity to be heard."  Ying Ji, 2013 VT 81, ¶¶ 6-7 (quotation omitted); cf. John v. Med. Ctr. Hosp. of Vt., Inc., 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978) (requiring "findings . . . that

10

there has been bad faith or deliberate and willful disregard for the court's orders, and . . . the party seeking the sanction has been prejudiced thereby" for "the ultimate sanction of dismissal" under Civil Rule 37(b)(2)).

¶ 22.    For example, in Ying Ji v. Heide, the court set a status conference and the plaintiff requested a continuance.  The court reset the hearing and provided notice to both parties, but neither the plaintiff nor her attorney appeared at the rescheduled status conference.  The court granted the defendant's motion to dismiss the case with prejudice.  The plaintiff appealed the trial court's denial of her Rule 59 motion to amend the judgment.  Although reversing on the basis that the trial court exceeded its discretion in denying the plaintiff's Rule 59 motion, we recognized in the context of Rule 41(b)(2) that "[a] lawyer's missing a scheduled status conference is no small matter, and th[is] omission needlessly sapped judicial resources and presumably imposed costs on [the] defendant in both time and attorney's fees." Ying Ji, 2013 VT 81, ¶ 8.  However, while the court "justifiably bristled at [the] plaintiff's counsel's failure to attend a status conference that had been rescheduled at [the] plaintiff's request . . . the court had at its disposal a range of tools to deal with the infraction, dismissal with prejudice being the most onerous to [the] plaintiff." Id.  We noted that "if we were reviewing on direct appeal the trial court's decision to dismiss [the] plaintiff's case, we would readily conclude that the trial court exceeded its discretion by dismissing [the] plaintiff's case outright with no notice to [the] plaintiff because counsel failed to appear at a status conference." Id. ¶ 9.

¶ 23.    Under the similar federal rule, courts have recognized the power of the court to dismiss an action for a plaintiff's failure to prosecute the case or comply with a court order, but also recognize that dismissal for lack of prosecution "is a harsh remedy to be utilized only in extreme situations." Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993) (quotation omitted) (concluding that court abused its discretion "[i]n light of lack of notice to plaintiff that her action would be dismissed if she failed to respond and her diligent prosecution up to that point,

11

as well as a lack of prejudice to defendant" after three months of delay); cf. Next Millennium Telecom Co. v. Am. Signal Corp., 112 F.4th 481, 484 (7th Cir. 2024) (upholding dismissal based on "pattern of delay and indifference" (quotation omitted)); see also Reporter's Notes, V.R.C.P. 41 (noting V.R.C.P. 41 "is substantially similar to Federal Rule 41, with minor modifications"); Deutsche Bank, 2016 VT 71, ¶ 18 (noting V.R.C.P. 41(b)(3) "is consistent with that in the federal courts, as well as many states" and "Rule 41(b)(3) is essentially identical to F.R.C.P. 41(b)").

¶ 24.    Here, while the trial court warned plaintiff that failure to prove the real party in interest would result in dismissal, the trial court made no findings that plaintiff failed to pursue the case, caused undue delay, or demonstrated continued noncompliance with the court's orders.  Nor does the record demonstrate inaction by plaintiff such as failure to attend a hearing or respond to repeated requests from the court, or that plaintiff unreasonably delayed its response to the court's order to prove the identity of the real party in interest.  See United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 258 (2d Cir. 2004) ("This is not a case in which the plaintiff 'deliberately proceeded in dilatory fashion' or ignored repeated warnings and deadlines, or where plaintiff's conduct could be viewed as contumacious with respect to the district court's directions." (alteration omitted) (citation omitted) (quoting Link v. Wabash R.R., 370 U.S. 626, 633 (1962))).  Plaintiff attended the hearing and complied with the court's order to provide proof of the real party in interest, although the court was unpersuaded.  The court therefore exceeded its discretion by dismissing the case with prejudice for plaintiff's failure to comply with the court's order.[6]

¶ 25.    The court concluded that dismissing the case with prejudice during post-judgment foreclosure proceedings vacates the foreclosure judgment.  The court did not vacate the foreclosure judgment on independent grounds.  Because we reverse the court's order, the judgment of

---

[6]  Plaintiff also argues defendant did not file a motion to dismiss for plaintiff's failure to comply with the court's order and thus the court's doing so on its own motion was invalid. Plaintiff further contends that the court lacked authority to dismiss the case after judgment for failure to prosecute. Given our conclusion that the court exceeded its discretion by dismissing the case under Rule 41(b)(2) we do not consider these arguments.

12

foreclosure is reinstated. We take no position as to whether the court correctly concluded that dismissal with prejudice for want of prosecution automatically vacates the foreclosure judgment.

Reversed. The judgment of foreclosure is reinstated, and the matter is remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice

¶ 26. **COHEN, J., dissenting.** I cannot agree with the majority that the trial court abused its discretion in dismissing this foreclosure proceeding. Plaintiff's incompetent recordkeeping, its shifting representations to the trial court, its sale of a mortgage and note that it now claims no longer legally exist, and its failure to provide adequate proof that it was the party entitled to enforce the foreclosure judgment, together support the sanction of dismissal here. Accordingly, I dissent.

¶ 27. The facts of this case justify the court's decision. After the case was reopened and mediation failed, plaintiff Ditech Financial LLC, which by then was involved in its own bankruptcy proceeding, moved to substitute US Bank Trust National Association as plaintiff based on purported assignments of the mortgage that post-dated the foreclosure judgment. Plaintiff explicitly stated that US Bank was now the holder of the note. The court granted the motion to substitute US Bank for plaintiff and extended the deadline for the sale. Only after defendant moved for reconsideration did plaintiff inform the court that it had actually lost the note, which therefore could not be transferred to US Bank as plaintiff had previously represented. Plaintiff argued for the first time, however, that the mortgage and note had legally merged with the 2018 foreclosure judgment, making its own subsequent assignment of the mortgage and note invalid. Accordingly, plaintiff argued, it was still entitled to enforce the judgment in its own name.

¶ 28. Despite taking this position in court, there is no indication that plaintiff ever informed defendant, or the purported holders of the mortgage and note, of its theory that those

13

documents no longer legally existed. Defendant continued to receive mortgage statements from Shellpoint Mortgage Servicing through 2024 indicating that she owed monthly payments and informing her that various other entities owned her loan. As the trial court found, this understandably discouraged defendant from attempting to negotiate an alternative settlement as allowed by statute, as she did not trust the information she was receiving.

¶ 29. The trial court ordered plaintiff to prove that it was the entity entitled to enforce the judgment and warned that it would dismiss the case if plaintiff failed to provide adequate proof. Plaintiff provided testimony from a representative of Shellpoint that Ditech had executed a limited power of attorney in 2019 for Shellpoint to act with regard to Ditech's mortgage assets. However, plaintiff failed to demonstrate that it had emerged from bankruptcy with continued control over the judgment or that Shellpoint controlled the judgment on its behalf. The court therefore, reasonably, dismissed the case pursuant to its earlier order.

¶ 30. Remarkably, plaintiff then moved for reconsideration on the ground that "[a]s it turns out," the original note had been in its attorney's office the whole time. It also belatedly provided hundreds of pages of documents that, it asserted, proved that it had the right to enforce the foreclosure judgment. The court appropriately denied the motion because plaintiff could have provided this information at the hearing and because the documentation provided still did not satisfy the court that plaintiff had the right to enforce the judgment.

¶ 31. Plaintiff's sloppy practices in this case indicate that little has changed since the foreclosure crisis that followed the 2008 financial crash. At that time, courts faced an epidemic of faulty foreclosures caused in part by the mortgage industry's securitization of mortgages and creation of pooling and servicing agreements, which made ownership of a mortgage independent of servicing and resulted in systemic errors in how banks documented and recorded mortgage interests. M. Wachspress, et al., Comment, In Defense of "Free Houses", 125 Yale L.J. 1115, 1119 (2016). The crisis required this Court to make emergency amendments to the foreclosure

14

rule to address the growing problem of "significant inaccuracies" in affidavits filed by lenders and services in foreclosure cases. Reporter's Notes—2010 Emergency Amendment, V.R.C.P. 80.1. It also led to a series of decisions concerning the preclusive effects of dismissal for plaintiffs' failure to comply with rules or prosecute foreclosure actions. See, e.g., Cenlar FSB v. Malenfant, 2016 VT 93, ¶ 42, 203 Vt. 23, 151 A.3d 778; Deutsche Bank v. Pinette, 2016 VT 71, ¶ 1, 202 Vt. 328, 149 A.3d 479.

¶ 32. In a lengthy dissent in one of those cases, Justice Dooley argued that the majority should not have ruled that a lender could bring a subsequent claim for default on a note where that "lender has previously accelerated a borrower's repayment obligations, brought suit for the entire amount due on the note, failed to prosecute the action, and had it dismissed with prejudice." Cenlar FSB, 2016 VT 93, ¶ 44 (Dooley, J., dissenting). Justice Dooley explained that it was unnecessary to answer that question in that case, but if we had to answer it, he would hold that such claims were not permissible because the dismissals of the cases had nothing to do with the substance of the lenders' positions or whether lenders should enter into forbearance agreements with borrowers. Id. ¶ 50. Instead, he explained,

> they have everything to do with how counsel for the lender engages in litigation and fulfills its obligation to the trial courts. On this basis, any remedy we impose is not disproportionate to the actions and inaction that caused the remedy. We need to send a clear message to counsel and its clients that these methods of conducting litigation are unacceptable and will not get them the remedies they seek even in part. The message should not be that they may file foreclosure action after foreclosure action until they finally win.

Id.

¶ 33. In my view, we face a similar situation here. Plaintiff was on notice that it faced dismissal if it did not demonstrate that it owned the right to enforce the foreclosure judgment, yet it did not seriously address the trial court's concerns. Plaintiff's failure to adequately respond to the court's order, coupled with its slipshod recordkeeping and its sale of a mortgage and note that it now claims no longer exists—which undoubtedly caused real confusion and anxiety for the pro

15

se defendant here—lead me to conclude that the court acted within its discretion in dismissing the action.[7] The sanction of dismissal with prejudice was not disproportionate to the actions and inaction that caused it. See id. Dismissal under these circumstances would serve both as a penalty and an important deterrent to future similar conduct by foreclosure plaintiffs. See John v. Med. Ctr. Hosp. of Vt., Inc., 136 Vt. 517, 520, 394 A.2d 1134, 1135 (1978) (noting that sanction of dismissal is sometimes warranted, and can serve "not only as a penalty, but as a deterrent as well"). For that reason, I would affirm the trial court's decision.

¶ 34.    I therefore respectfully dissent.

_____
Associate Justice

---

[7] Although the trial court described the dismissal as being for failure to prosecute, I think it can be viewed as a dismissal for failure to comply with the court's July 2024 order directing plaintiff to provide proof that plaintiff was the entity that owned the right to enforce the judgment. See V.R.C.P. 41(b)(2) ("For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."). The court did not link its order to a specific motion by defendant, but defendant repeatedly requested the case be dismissed due to plaintiff's lack of standing in its various filings.