VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

Docket Nos. 25-ENV-00030
25-ENV-00031
25-ENV-00032



| Bellows Falls Hydroelectric Project Water Quality Cert. Appeal, et al. |
| --- |

## ENTRY REGARDING MOTIONS

**Title:** Motion for Expedited Review and Motion to Dismiss Second Revised Statement of Questions (Motions #8, 9)

**Filer:** Merrill E. Bent, Esq., Suzanne R. Armor, Esq., co-counsel for Applicant

**Filed Date:** December 24, 2025

Memorandum in Opposition to Applicant's Motion to Dismiss, filed by Ronald A. Shems, Esq., et al., co-counsel for Appellant, on January 23, 2026.

Applicant's Reply to Appellants' Opposition to Motion to Dismiss filed by Merrill E. Bent, Esq., on January 29, 2026.

**The motion is GRANTED IN PART and DENIED IN PART.**

These coordinated matters involve appeals by Connecticut River Conservancy (CRC), Vermont Natural Resources Council (VNRC), Conservation Law Foundation (CLF), and American Whitewater (AW) (collectively, Appellants) from water quality certifications (WQCs) issued by the Vermont Agency of Natural Resources (ANR) to Great River Hydro, LLC (Applicant) for hydroelectric projects located on the Connecticut River in Bellows Falls, Vernon and Wilder, Vermont, respectively. ANR issued each of the relevant certifications with conditions on April 16, 2025, and those certifications were timely appealed on May 16, 2025.

### Procedural History

On June 5, 2025, Appellants filed a Statement of Questions consisting of eighteen Questions in each of the appeal dockets. In response, Applicant moved to dismiss all Questions before the Court.[1] Appellants opposed the motion and moved to amend their Statement of Questions, which Applicant opposed.[2]

---

[1] In the alternative, Applicant requested that the Court order Appellants to clarify their Questions 3–18 as authorized by V.R.E.C.P. 5(f).

[2] Appellants motion to amend was accompanied by a proposed Revised Statement of Questions.

By a December 4, 2025 Decision on Motions , the Court granted Applicant's motion to dismiss Questions 1 and 2 and denied the motion to dismiss relative to Appellants' other questions (Decision on Motions). Additionally, we granted Applicant's motion for clarification and directed Appellants to further clarify their Statement of Questions consistent with guidance that the Court provided. The Court's ruling was premised largely on the near-complete lack of citations to the Vermont Water Quality Standards (VWQS) or other provisions of state and federal law in Appellants' initial Statement of Questions.

Appellants filed a proposed revised Statement of Questions in connection with their motion to amend. While that proposed revision attempted to rectify the shortcomings of the original Statement of Questions, thereby partially clarifying the issues that Appellants sought to raise on appeal, the Court concluded that the proposed revision remained overly broad and contained "catch-all" language that was inappropriate for a Statement of Questions. Thus, we granted in part and denied in part Appellants' motion to amend their Statement of Questions.

The Court directed Appellants to file a Second Revised Statement of Questions and provided certain drafting guidance which included specific examples of "linguistic practices" to avoid in their revision, such as:

> 1) repeated use of the word "including," which implies that other legal provisions may be relevant to the Question; 2) references to "appropriate requirements of law" without any further indication of what those are or how they apply; 3) citations to provisions of the VWQS that are multiple paragraphs or pages long, such as the antidegradation policy; 4) citations to general criteria applicable to all waters, and 5) citations to entire statutory chapters or subchapters (e.g., "subchapter 3" or "10 V.S.A. Ch. 123").

Decision on Motions at 17. We also noted that "many of Appellants' Questions, as proposed for amendment, continue to focus on the proceedings below and are not consistent with our de novo hearing standard of review." Id.

Since Appellants had properly raised certain issues on appeal, and because the Court did not believe that further amendment would be futile, the Court gave Appellants another 14 days to further amend their Statement of Questions consistent with the guidance provided therein. We also stated that the Court would evaluate the certification applications de novo, under only those provisions of the VWQS (or other regulatory provisions) that Appellants had specifically cited and we directed Appellants to avoid propounding duplicative Questions.

Thereafter, Appellants timely filed their Second Revised Statement of Questions, which contains modified Questions and numerous specific citations to the VWQS and provisions of state and federal law.[3] Applicant has again moved to dismiss all but one of the Appellants' revised Questions "because they do not conform to the guidelines articulated by the Court in its . . . Decision on Motions[,] . . . fail to adhere to the Court's de novo review standard, and/or because Appellants lack standing to assert such Questions."[4] Applicant also moved for expedited review of its motion. Appellants have opposed both motions. Therefore, we must evaluate the Second Revised Statement of Questions in light of the criteria laid out above and the legal standards applicable to Applicant's second motion to dismiss.

For the reasons discussed below, Applicant's pending motion to dismiss is **GRANTED** in part and **DENIED** in part. The motion for expedited review is **DENIED**.

### Discussion

**A. Applicant's Motion to Dismiss for Lack of Standing/Subject Matter Jurisdiction**

As a preliminary matter, Appellants include in their Second Revised Statement of Questions an unnumbered Question that asks: "Whether the correct and legally mandated standard for a § 401 certification is the 'will comply' standard, and not the 'reasonable assurance' standard." This Question raises functionally the same issue(s) raised in Appellants' Questions 1 and 2 of both their original and proposed revised Statement of Questions. The Court dismissed Questions 1 and 2 for lack of statutory standing under 10 V.S.A. § 8504(d)(2)(A) and subsequently denied motions for reconsideration and interlocutory appeal relative to those same Questions. For the reasons previously stated, the Court is without subject matter jurisdiction to address Questions 1 and 2. Since the unnumbered Question in the Second Revised Statement of Questions raises the same issue(s), it is similarly **DISMISSED** for lack of subject matter jurisdiction.

In that vein, V.R.C.P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. When reviewing such a motion, this Court accepts all uncontroverted factual allegations as true and construes them in the light most favorable to the nonmoving party. Rheaume v. Pallito,

---

[3] As noted in their Second Revised Statement of Questions, to maintain general numeric consistency with their original Statement of Questions and Revised Statement of Questions, Appellants' Second Revised Statement of Questions contains eighteen numbered paragraphs—four of which are labelled "Reserved" and contain no question—and one unnumbered question. Thus, in total, Appellants' Second Revised Statement of Questions contains fifteen substantive Questions, most of which contain multiple subparts.

[4] Applicant seeks dismissal of all of Appellants' revised Questions except Question 17.

2011 VT 72, ¶ 2, 190 Vt. 245.  Standing is a "necessary component to this Court's subject matter jurisdiction."  Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 235.

This Court also has an independent obligation under V.R.C.P. 12(h)(3) to determine whether subject matter jurisdiction exists and to dismiss an appeal where "it appears by the suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter . . . ."  V.R.C.P. 12(h)(3).  This would encompass an obligation to ascertain whether the Court has subject matter jurisdiction over a proceeding (or an aspect of a proceeding) once doubts have been raised regarding that issue.  See In re Charron 13-Lot PUD Preliminary Plat, No. 24-2-19 Vtec, slip op. at 1 n.1 (Vt. Envtl. Ct. June 7, 2019) (Durkin, J.) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) ("Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.")) (additional citation omitted).

In this case, Applicant has challenged Appellants' standing to appeal issues related to VWQS § 29A-303(3), (4) and (7).[5]  Those provisions specify "water quality criteria that must be achieved in all waters, regardless of their classification," including criteria that relate to the taste or odor of fish (29A-303(3)), maintaining the natural the color of waters (29A-303(4)), and preventing the discharge of toxic substances that exceed certain concentrations or quantities (29A-303(7)).  Applicant argues that Appellants "do not identify any specific comments that relate to these generally applicable criteria" and that these issues "were not raised with sufficient particularity to elicit a meaningful response from ANR," in violation of 10 V.S.A. § 8504(d)(2)(A).  Since standing is a component of the Court's subject matter jurisdiction, the Court addresses this argument as a threshold matter.  See Ihinger v. Ihinger, 2003 VT 38, ¶ 5, 175 Vt. 520, 521 (mem.).

Again, a would-be appellant of an ANR decision must have "submitted to the Secretary a written comment during the comment period or an oral comment at the public meeting conducted by the Secretary."  10 V.S.A. § 8504(d)(2)(A).  An appellant "may only appeal issues related to the person's comment to the Secretary."  Id.  "To be sufficient, for the purposes of appeal, a comment to the Secretary shall identify each reasonably ascertainable issue with enough particularity so that a meaningful response can be provided."  10 V.S.A § 8504(d)(2)(A)(i).  The appellant must also identify each comment submitted to the Secretary that identifies or relates to the issue raised in a subsequent appeal.  10 V.S.A. § 8504(d)(2)(A)(ii).  Further, when interpreting § 8504(d)(2)(A), this Court has adopted the principle applicable to Statements of Questions which states that issues intrinsic to the

_____

[5] These provisions are cited in Questions 3, 10, 14a, and 18 of Appellants' Second Revised Statement of Questions.

questions in a Statement of Questions may be preserved for review on appeal. In re Champlain Parkway SW Discharge Permit, No. 76-7-18 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Apr. 29, 2019) (Durkin, J.) (citing In re Jolley Assocs., 2009 VT 132, ¶ 9). A party moving to dismiss an appeal, or issue within an appeal, pursuant to § 8504(d)(2)(A) has the burden of proving that the comment requirements were not satisfied. 10 V.S.A. § 8504(d)(2)(A)(iii). Thus, Applicant here has the burden of demonstrating that dismissal is warranted under § 8504(d)(2)(A).

In evaluating this argument, the Court (again) reviewed the Appellants' notices of appeal, Statements of Questions, comments to ANR, and ANR's various "responsiveness summaries." Although the notices of appeal, statements of questions and responsiveness summaries do not identify comments related to § 29A-303 with particularity, concerns related to that provision are identified in a series of letters sent to ANR by Princeton Hydro, the consultant for Appellant CRC. This includes specific concerns related to taste and odor, color and toxic substances. See Exhibits 4, 6 and 7 of Applicant's Motion to Dismiss Appellants' Statement of Questions (filed Sept. 10, 2025). Although ANR does not appear to have addressed these comments in its responsiveness summaries, this does not change the fact that the issues were raised to the Secretary with particularity. Therefore, Appellant has standing to raise issues of compliance with § 29A-303(3), (4) and (7) on appeal. To the extent that Applicant moves to dismiss for lack of standing on these grounds, it has failed to meet its burden and the motion is **DENIED**.

Applicant also argues that Questions 6 and 14c of the Second Revised Statement of Questions must be dismissed for lack of standing because it alleges those Questions assert third-party standing on behalf of the public at large. While it is true that the plain language of both Questions 6 and 14c ask whether post-certification/after-the-fact plan development "circumvents the public's right to notice and comment" (emphasis added) under applicable statutes and regulations, the Appellants explained that these Questions are intended to ask whether "Appellants' members, as members of the public, have suffered an injury by the failure to comply with public notice and comment requirements." Given Appellants' representation and the applicable standard of review, the Court will construe Questions 6 and 14c to ask, respectively, whether post-certification/after-the-fact plan development "circumvents Appellants' members' right to notice and comment" under the statutory and regulatory provisions cited. The motion to dismiss these Questions on third-party standing grounds is **DENIED**.

### B. Applicant's Motion to Dismiss Questions for Failure to Adhere to this Court's Guidelines and the De Novo Review Standard, Etc.

Next, Applicant argues that dismissal of all but one of the second revised Questions is warranted because Appellants failed to adhere to this Court's guidance in the Decision on Motions and to conform their Questions to our trial de novo standard. Further, Applicant states that the Questions remain impermissibly broad and ambiguous, even after amendment, and should consequently be dismissed. Appellants, in turn, generally argue that their Second Revised Statement of Questions is not overly broad and "identifies in a concise and clear manner precisely the issues on appeal." They further contend that they have complied with the Court's guidance, identifying the relevant standards and framing the issues in a manner consistent with our de novo standard.[6]

As a general concept, Appellants correctly state that appeal rights must be liberally construed in favor of persons exercising those rights. In re Atwood Planned Unit Dev., 2017 VT 16, ¶¶ 11, 15, 19. It is also true, however, that this Court has the authority to require Appellants to limit or revise their Questions to ensure that the other parties and the Court have adequate notice of the matters to be considered on appeal. Id. at ¶¶ 13–14. Claims must have enough specificity to notify the opposing party and the Court of the issues on appeal because, once the matter proceeds to trial, the Court is obligated to resolve all issues raised by a statement of questions.[7] Id. at ¶¶ 15, 19.

In its Decision on Motions, the Court found that most, if not all of Appellants' Questions as originally proposed were unreasonably vague because they were almost completely devoid of citations to the VWQS or other specific provisions of law, and many of the Questions did not comport with our de novo hearing standard. Thus, the Court granted Applicant's motion for clarification. Appellants proposed to amend through a concurrent motion to amend their Statement of Questions by adding citations to the VWQS and other statutory or regulatory provisions, thereby providing or attempting to provide further clarification. Some of those citations were specific and provided reasonable notice of the issues that Appellants seek to raise. Even as revised, however, the Court found that many of Appellants' proposed revised Questions still contained overly broad citations to the VWQS (or other statutory or regulatory provisions) and/or "catch-all" language that did not provide reasonable notice of the issues on appeal. Because it was clear that at some level the Questions sought to raise matters within this Court's jurisdiction and that related to the application's compliance with applicable law, the Court provided Appellants with its guidance, as noted above, in the hope that it would help Appellants focus and narrow the issues on appeal.

---

[6] The ANR has not taken a position on the pending motions.

[7] Additionally, and presumably, Applicant is also obligated to address all of the relevant issues raised by the Statement of Questions.

To the extent that Appellants contend that their Second Revised Statement of Questions is clear and concise in its identification of the issues on appeal, the Court disagrees in part. While Appellants may have attempted to follow the Court's guidance by including specific citations to statutory and regulatory provisions in their Second Revised Statement of Questions, the number and breadth of those citations alone present a significant challenge. Indeed, replacing the bare citations in the Second Revised Statement of Questions with the substantive language of those provisions results in a document over 25 pages in length. Those citations also cover a wide range of topics under the VWQS with dramatically different levels of specificity, presumably requiring the Applicant to present evidence on many disparate subjects. As discussed in Atwood, however, the fundamental issue for the Court is not the number of Questions or the range of issues covered, but whether the Questions are sufficiently specific to provide Applicant and the Court with adequate notice of the issues on appeal. 2017 VT at ¶¶ 13–14. Put another way, Atwood addresses questions that are unduly broad in the sense that they may include legal issues that are not readily apparent or that the parties may not understand to be before the Court. Atwood does not, however, stand for the proposition that Questions are unduly broad when they provide direct citations to relevant law and those regulations/provisions are either themselves broad or the Questions are numerous.

As presently drafted, the Second Revised Statement of Questions identifies several varied topics and asks the Court to evaluate the applications' compliance with provisions of the VWQS (or other applicable statutory or regulatory provisions) as they relate to those topics. For example, Question 3 asks about the applications' compliance with specific provisions of the VWQS and 10 V.S.A. § 5403 as they relate to climate change and climate change impacts. Other topics include recreation, recreation management plans/conditions subsequent, the natural and new flow regime(s), fish passage, erosion, invasive species, endangered species, operations compliance and monitoring plans/conditions subsequent, aesthetics and the impact of other hydroelectric facilities on compliance with specific water quality or statutory standards. These topics, read in conjunction with the specific standards cited, are adequate to place the parties and the Court on notice regarding the issues on appeal. Certainly, many Questions could have been phrased more clearly, concisely, or in a manner more consistent with our de novo standard of review, but the Questions as presently drafted suffice to meet the requirements of law. With limited exceptions, discussed herein, the Court is not inclined to require Appellants to narrow the issues further, or to dismiss Questions for lack of compliance with the Court's guidance. This is because the Atwood Court emphasized both the liberal construction of

appeal rights and that "[a]n appellant may challenge all aspects of a project, as long as the claims have enough specificity to notify the opposing party and the court of the issues on appeal."[8] Id. at ¶14.

Applicant contends that the Second Revised Statement of Questions does not fully comply with this Court's guidance set forth in the Decision on Motions. Although potentially appropriate in some instances, it was not the Court's intent here to set up a binary outcome where anything other than strict compliance with that guidance would result in/require dismissal. Nor does Applicant's motion point to precedent supporting that contention.[9] The Court largely directed Appellants to "avoid" certain practices without specifying a consequence for non-compliance. Questions that are drafted in a manner consistent with our de novo standard and that avoid duplication of issues are helpful to focus the parties and the Court and conserve resources. We are also able, however, to construe the Questions in an appropriate manner and to eliminate/minimize unreasonable duplication in any decision we may issue.

Similarly, while broad language and citations to provisions that are multiple pages or paragraphs long can be problematic, we are able to construe provisions to focus on relevant regulatory language in light of the evidence presented at trial.[10] In this regard, we note that provisions of the VWQS are themselves broadly worded, address a range of subjects, and, in places, appear to be a mix of both policy and regulation. We also note that Questions in the Second Revised Statement of Questions that contain explicit or implicit assumptions—including, for example, that the VWQS address specific topics or require certain things as part of the certification process—remain subject to motion practice, including motions for summary judgment, and ultimate adjudication by this Court to address those issues.

---

[8] The Court also anticipates that as the parties engage in discovery and prepare for trial, the specific issues in dispute may come into sharper relief.

[9] While V.R.C.P. 41(b)(2) authorizes the Court to involuntarily dismiss a matter for failure to comply with the Civil Rules "or any order of court," such action is discretionary. V.R.C.P. 41(b)(2); Cegalis v. Knutsen, No. 22-AP-280, at 3 (Vt. May 5, 2023) (unpublished mem.); Bank of New York Mellon v. Johnston, No. 2020-244, at *3 (Vt. Oct. 15, 2021) (unpublished mem.). In this case, the Court does not find that any non-compliance by Appellants with our "guidance" was in bad faith or willful and, except as otherwise provided herein, the Court is not inclined to exercise its discretion in favor of dismissal. See Ditech Financial LLC v. Brisson, 2025 VT 54, ¶¶ 20–21; cf. John v. Med. Ctr. Hosp. of Vt, Inc., 136 Vt. 517, 519 (1978) (requiring "findings . . . that there has been bad faith or deliberate and willful disregard for the court's orders, and . . . the party seeking the sanction has been prejudiced thereby" for "the ultimate sanction of dismissal" under Civil Rule 37(b)(2)).

[10] In directing Appellants to avoid citations to "general criteria applicable to all waters," it was not our intention to preclude Appellants from raising issues under VWQS § 29A-303 (titled "General Criteria Applicable to All Waters"). Rather, our intent was to focus Appellants on those provisions of the VWQS that apply to the Connecticut River in particular, since it is undisputed that the Connecticut River is a Class B(2) cold water fish habitat and some of Appellants' prior questions appeared to (potentially) reference provisions of the VWQS that were not focused on/relevant to such waters.

Applicant argues that two of Appellants' Questions, specifically Questions 5 and 14b, are unduly argumentative in their citations to case law and use of the phrase "unlawful conditions subsequent." While these Questions may contain some argumentative elements, the Court is able—as above—to construe them in a manner that minimizes or eliminates any argumentative elements. Applicant also remains free to present the Court with its arguments regarding the relevance and/or legal significance of the case law cited/referenced by Appellants in this matter and any characterizations thereof that Applicant believes are incorrect or inaccurate.

In its Decision on Motions, the Court specifically indicated that Appellants should endeavor to eliminate so-called "catch-all" language from their Statement of Questions, calling out specifically Appellants' use of the word "including." The Court stated that "[i]f Appellants' further amended Statement of Questions contains 'catch-all' or similarly broad language or citations, the Court will not consider it." In their Second Revised Statement of Questions, Appellants have eliminated some of their catch-all language (e.g., "appropriate requirements of law") but continue to use the word "including" or the phrase "including but not limited to" in certain Questions. See Second Revised Statement of Questions at Questions 3, 9 & 18. Appellants distinguish their use of the word "including' in this context by observing that they are attempting to identify/refer to potentially relevant facts, as opposed to other potentially relevant legal standards, in their questions. While correct that the Decision on Motions focused on "other legal provisions that may be relevant," Applicant needs to have some reasonable sense of the scope of factual evidence it may need to present to the Court. Appellants' linguistic practice deprives Applicant of that reasonable sense of scope and reasonable notice, and leaves both Applicant and the Court without a clear idea of the evidence that would need to be produced in order to respond appropriately to the topics raised by Appellant. Therefore, the Court will not consider the words "including"/"including but not limited to" in Questions 3, 9 and 18 or, rather, will construe the list of items that follow the words "including"/"including but not limited to" as examples only and not as specific topics that the Applicant must address at trial.[11]

---

[11] Thus, for example, the Court will read Question 3 to ask "Whether GRH has provided [at the close of the evidence] sufficient information about climate change and climate change impacts to demonstrate that the proposed operations will comply with: [the regulatory and statutory provisions listed]?" Similarly, we will construe Question 9 to ask: "Whether GRH has provided sufficient information [at the close of the evidence] related to erosion to comply with [the regulatory provisions listed]?" Finally, we will construe Question 18 to ask: "Whether GRH has provided sufficient information [at the close of the evidence] about the effect of flows from the upstream 15 Mile Falls facilities on the Wilder impoundment to demonstrate the proposed activities will comply with [the] VWQS [provisions listed]?"

At the time that Applicant filed the pending motion to dismiss, on December 24, 2025, the Applicant also filed a motion for expedited review. That motion generally faulted Appellants for the time required to reach a final Statement of Questions and requested expedited filings on the motion to dismiss. While correct that it has taken Appellants six months or more to get to a Statement of Questions that puts the Applicant and Court on adequate notice of the issues on appeal, delays have also occurred because of the extensive motion practice that Applicant has engaged in (including two 40-plus page motions to dismiss). The Court understands that Applicant is frustrated by the timeline to date, but the blame does not exclusively rest with one party. From the Court's perspective, both parties could have taken steps to move this matter more expeditiously and cost effectively to trial. In any event, the request for expedited review is now largely moot since the Court was not inclined to deprive any party of the right to respond/reply to the other's filings (which the principal parties took full advantage of). Therefore, the motion for expedited review is **DENIED**.

## Conclusion

For the foregoing reasons, Applicant's motion to dismiss Appellants' Second Revised Statement of Questions is **GRANTED** in part and **DENIED** in part. Applicants' motion for expediated review is **DENIED** as moot. The parties should take all reasonable steps to cooperatively move this matter forward to trial.

Electronically signed on February 5, 2026, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division